PEARSON CHAPMAN
vs.
JAS. O. C. HOSKINS.
} DECEMBER TERM, 1851.

[RIGHTS OF RIPARIAN PROPRIETORS—RIGHT OF THE STATE TO GRANT LANDS COVERED BY NAVIGABLE WATERS.]

Since the decision of the Court of Appeals of this state in the case of *Browne* vs. *Kennedy*, 5 *H. & J.*, 195, it is impossible to deny but that it is competent to the state to grant land covered by navigable waters, subject to the right of the public to fish in, and navigate them ; but it does not follow that she is bound to do so, or will do so, in every case in which application is made to her.

Owners of lands bordering upon navigable waters are, as riparian proprietors, entitled to any increase of the soil which may result from the gradual recession of the waters from the shore, or from accretion by alluvion, or from any other cause ; and this is regarded as the equivalent for the loss they may sustain from the breaking in, or encroachment of the waters upon their lands.

42*

Where a party and those under whom he claims have held for nearly a century, uninterrupted and unmixed possession of lands, the title founded on this possession is impregnable against any title which the state can grant, as is conclusively shown by the acts of 1818, ch. 90, and 1849, ch. 424.

Where a person takes out a warrant for a particular parcel of land, and fails to proceed according to the rules of the land office to perfect his title under the warrant, he will be regarded as abandoning his title under the warrant; but he does not thereby surrender, or waive any title to the same land he may have previously possessed.

If the patentee of lands covered by navigable water should by any act obstruct the navigation, or interfere with the right of fishery, he will be held responsible for such act in the appropriate tribunal, and his patent will afford him no protection.

The land for which a grant was sought in this case was covered by navigable water, and so situated that in case the waters should recede, the rights of a riparian proprietor would attach. Under these circumstances, a grant was refused upon the ground, that it could confer no substantial rights, and its only effect would be to tempt the grantee into a contest with the riparian owner, or to interfere with the public right of fishery and navigation which the state can neither destroy nor impair.

The general rule of the land office is, in doubtful cases, to let the patent issue, because the decision of the Chancellor on the *caveat* being final, if the patent be refused, the party applying for it is concluded; whereas, if it be granted, the question may afterwards be brought before a court of law or equity by an action of ejectment or a *fieri facias*, and the benefit of an appeal be thus secured.

But, if from the nature and circumstances of the case, the decision of the Chancellor upon the *caveat* must be final either way; or if there is no ready or convenient mode of bringing the question, decided by him, before a court of law or equity, so as to subject his judgment to the revision of a superior tribunal, he must decide the case upon the best judgment he can form, and the above rule is inapplicable.

In this case, so long as the land is covered with water, which may be for an indefinite period, no mode exists by which, in case a patent should issue, the question of its validity could be brought before a court of law or equity. An action of ejectment could not be brought, because neither party would have any possessory right thereto, and a *scire facias* would not lie to vacate the patent in chancery, because there could be no pretence that there was either fraud or surprise, or undue advantage taken in procuring it.

In the absence of positive law upon the subject, or when the law of the land office does not prescribe the rule, the general principles of equity furnish the rule of the decisions in this court.

———

[This case came before the Chancellor as judge of the land office, upon a *caveat* to a certificate for "Hoskins' Island," filed by Pearson Chapman, the caveator, on the 23rd of August, 1851.

This certificate recites, "that by virtue of a special warrant granted at the land office the 23rd day of May, 1850, to James O. C. Hoskins, of the city of Alexandria, in Virginia, for five acres of vacant land lying in the county of Charles, being an island, or bar, in the Potomac river, commencing below "Craney Island" and running up to, and adjoining said island, &c. I hereby certify that I have carefully surveyed, and laid out for, and in the name of him, the said James O. C. Hoskins, the aforesaid vacant land, it being an island, or bar, in the Potomac river, commencing below "Craney Island," and running up to, and adjoining said island, which is now called "Hoskins' Island," and is bounded as follows : &c., containing, and now surveyed, and laid out for six acres, two roods, and eight perches, this 4th day of March, 1851. James L. Brawner, surveyor of Charles county."

The caveator protests against the issuing of a patent for this land.

*First.* Because, with a view to obtain a patent according to said certificate, the said Hoskins has placed large quantities of stone in the Potomac river where it is navigable, and within the ebb and flow of the tide, below an island in said river, called "Craney Island," belonging to this caveator, in such manner as to obstruct the navigation of said river, and more especially the navigation to and from said "Craney Island" to the great injury of the caveator, and it is the object of said Hoskins to form an artificial island or embankment, resting upon, and connected with said stones, and this, caveator avers, and insists, that if a patent is granted, as prayed, to said Hoskins the natural approaches to "Craney Island" will be obstructed and destroyed to the south of said island, and the navigation to and from said island in that quarter greatly hindered and prevented.

*Second.* Because said Hoskins seeks by said certificate of survey, and the patent to be therein granted to build an artificial island, or embankment, on the flats adjoining "Craney Island," at a place where there is seven feet of water over said flats, and where vessels can navigate, and do navigate said

river with the ebb and flow of the tide, to the great damage of the caveator, who is the owner and proprietor of "Craney Island" and as such, is entitled to all the natural approaches by water thereto, free from all obstructions or nuisances thereto.

*Third.* Because said survey includes ground covered by navigable water, within the ebb and flow of the tide, and if said land so covered by navigable water can be patented, which is denied, then this caveator shows that he is the owner of the land patented in the year 1673, by the name of "Grimes' Ditch," together with an island about half a mile distant from said land, and your caveator is prepared to show, and now avers, that said island is known by the name of "Craney Island" and has long been possessed by him, and those under whom he claims, under and according to said patent, and that said island formerly contained a large body of land, which since the date of said patent has gradually been washing away until now it is reduced to one acre, or thereabouts, and your caveator further showeth that said "Hoskin's Island," as surveyed, is within the area and ambit of said "Craney Island" as originally patented in the patent of "Grimes' Ditch," and therefore, if said land included in the survey of "Hoskins' Island" be proper for a patent, it has already been patented as aforesaid, and is now held by this caveator under said patent, which is in full force and virtue.

*Fourth.* Because this caveator is the owner of "Craney Island," and as such, has for many years been accustomed to have and maintain a fishery on, and from the shores of said island, by hauling a seine by himself or his tenants, and the said Hoskins seeks by his said survey and proceedings, to obstruct and destroy the fishery and fishing berth of this caveator, by taking up as vacant, the land covered by water immediately in front of the fishing shores of "Craney Island."

*Fifth.* Because the surveyor never actually run the lines of said "Hoskins' Island," as he has certified the same, but has merely protracted or extended said lines on paper from the base or points connected with the shores of "Craney Island."

The testimony taken in the cause, and all other proceedings

are sufficiently stated in the opinion of the Chancellor, delivered on the 30th of December, 1851.]

THE CHANCELLOR:

This case, which comes before the court upon a *caveat* to the certificate of "Hoskin's Island" filed by Pearson Chapman, having been argued orally, and in writing, with learning and ability by the counsel of the respective parties, has been very carefully considered by the court, and I proceed now, briefly, to state the grounds upon which my opinion is formed.

Since the decision of the Court of Appeals of this state in the case of *Browne* vs. *Kennedy*, 5 *Har. & Johns.*, 195, it appears to me quite impossible to deny that it is competent to the state to grant land covered by navigable waters, subject to the right of the public to fish in and navigate them. The point, not only as I understand it, arose in that case, but every judge who sat in the cause, concurred in the opinion so far as this question is concerned, though upon the other points, some disagreement seems to have existed, and I strongly incline to think, that the doubts which have been expressed upon various occasions, and the apparent conflict, and difficulties which embarrass the subject proceed from the cause referred to by the judge who delivered the majority opinion; that is, inattention to the distinction between the power to grant the exclusive privilege of fishing in navigable water, in violation of the common piscatorial right, and the power of granting the soil, *aqua cooperta*, subject to the common user.

It is one thing to grant the soil covered by the navigable waters of a river, subject to the right of the public to fish in, and navigate them, and another, and a very different thing to grant to an individual the exclusive right of fishing therein; and it was against the authority of the crown, to grant this latter right, that the provision in *magna charta*, to which reference has been made, was directed. 3 *Kent Com.*, 409 *(note c.)* 5 *Har. & Johns.*, 203.

A passage from the opinion of the Chief Justice of the United States in the case of *Martin et al.* vs. *Waddell*, 16,

*Pet.*, 410, has been read, and it is supposed to be in conflict with the decision of the Court of Appeals in *Browne* vs. *Kennedy*. But, upon carefully examining the language of the Chief Justice, it will be found, I think, that no such conflict exists. He was not discussing the power of the king since *magna charta*, to grant to the subject a portion of the soil, covered by the navigable waters of the kingdom, without interfering with, or affecting the public, or common right of user, for purposes of navigation or fishing; but his power to make such grant, so as to confer upon the grantee, the exclusive right of fishing, and he concluded, that from the opinions expressed by the judges of the court of King's Bench in the case of *Blundell* vs. *Catterall*, 5 *Barn & Ald*, 287, 294, 304 and 309, and the *Duke of Somersett* vs. *Fogwell*, 5 *Barn & Cres.*, 883, 884, that the point must be regarded as settled in England, against the power, not to grant the soil covered by navigable waters subject to the common right, but to make such grant in violation of, or in restraint of, such right.

It is very clear, I think, that the opinion of the Chief Justice is not in opposition to the decision of the Court of Appeals in *Browne* vs. *Kennedy ;* and that his high authority cannot be invoked to shake, or throw a doubt upon the correctness of that decision. But, if it were otherwise, considering as I do that the point in question was expressly adjudicated by the Court of Appeals, I should regard it as a binding authority, though sitting here as judge of the land office, my judgment is not, by direct appeal subject to the revision of the appellate court.

But, though looking to the case of *Browne* vs. *Kennedy*, I am clearly of opinion, the state has the power to grant land covered by navigable waters, subject to the right of the public to fish in, and to navigate them, it by no means follows, that she is bound to do so, or that she will do so, in every case in which application is made to her.

In the case now under consideration, Mr. Hoskins, the caveatee, obtained from the land office a special warrant for five acres of land, described as "vacant land, lying in the

county of Charles, being an island or bar in the Potomac river, commencing below Craney Island, and running up to, and adjoining said island," &c. But the evidence shows very clearly, that in point of fact, all the land covered by the survey, except where it joins "Craney Island," claimed as the property of the caveator, Mr. Chapman, is under navigable water, in the strict and common law sense of the term, being not only navigable, but subject to the influence of the tides ; and if a patent should issue upon the certificate, it is not to be controverted, that the patentee would hold, subject to the *jus publicum*, which the state, if so disposed, could not grant away or impair.

Mr. Chapman, the owner of Craney Island, for I assume him now to be such, objects to the grant of the patent upon this survey, upon several grounds.

The objection, that the soil is covered by navigable water is already disposed of, and the opinion expressed, that notwithstanding such is the case, the state has the power to make the grant subject to the general right of navigation and fishery. He next insists, however, that being the owner of Craney Island, he is entitled as riparian proprietor, to any increase of the soil which may result from the gradual recession of the waters from the shore, or whether the accretion is by alluvion, or from any other cause, and that such is his right, is too well established to be disputed. *Giraud's Lessee* vs. *Hughes et al.*, 1 *Gill & Johns.*, 249. Evidence has been produced to show that "Craney Island" was formerly considerably larger than it is now, portions of the soil having been washed away by the river, or the increase in the volume of its waters, having submerged parts, which were once dry land ; and as the riparian title to accretion by alluvion, or the receding of the waters from the shore is the equivalent for the loss the owner may sustain, from the breaking in, or the encroachment of. the river, upon his land, there would seem a peculiar propriety, in abstaining from any act which may deprive him of that equivalent, when we see he has actually suffered by the encroachment of the waters.

Having sustained a loss of a part of his land by the invasion of the waters, nothing can be clearer, than that the state should do no act, which may deprive him, or even embarrass his right to the equivalent which his exposure to such loss entitles him to claim, and if, as observed by the counsel for the caveatee, the land included in Mr. Hoskin's survey is gradually rising from the water, the riparian right of Mr. Chapman should be allowed to fasten upon it as a compensation for that which he has lost by the action of the same element upon his land.

Mr. Hoskins cannot complain, as it seems to me, that he has been, in any way, misled by the state, or that any imposition or bad faith has been shown towards, or practiced upon him.   The description of the land furnished by himself, represented it as "vacant land, being an island or bar in the Potomac river, commencing below Craney Island, and running up to, and adjoining said island."   It was not described, as is the case, as land covered by the navigable waters of the river Potomac ; but as an island or bar in the river, and it was not until the surveys were made, and proof taken upon the interposition of the *caveat* by Mr. Chapman, that the true state of the facts was ascertained.

But it is urged on behalf of Mr. Hoskins, that Chapman has no title to Craney Island, or at least, that his title is not altogether free from doubt ; first, because he cannot make title to it, under the patent for "Grimes' Ditch," or in any other way And, secondly, because if he could make such title, by taking out a warrant for it as vacant land in 1836, he must be regarded as having surrendered his right ; and that having failed to comply with the rules of the land office by compounding upon his certificate returned upon that warrant ; and a proclamation warrant having been obtained by Hoskins to effect the same land, the title of Chapman under his warrant fell. ·

I do not deem it necessary to express a very decided opinion in reference to the title of Chapman under the patent for "Grimes' Ditch," though looking to all the evidence and the circumstances of the case, I should be disposed to think he

could make out a title under that patent. But if this were doubtful, how can it be possible to dispute his title, when the long, uninterrupted, and unmixed possession of himself and those under whom he claims is considered. That his title, founded on this possession, is impregnable against any title which the state can grant, is conclusively shown by the acts of 1818, ch. 90 and 1849, ch. 424. I cannot concur in the argument that Mr. Chapman must be considered as having surrendered his previous title by taking out a warrant for "Craney Island" in 1836. If the argument is sound, then, any person who takes out a warrant to affect a parcel of land, supposing it to be vacant, must proceed to perfect his title under it, though he subsequently ascertains that the land he proposed to take up, is not vacant, but is included within the lines of land to which his title is undisputed.

By failing or omitting to proceed according to the rules of the land office, to perfect his title under the warrant of 1836, Mr. Chapman did nothing more than abandon his title founded upon that warrant, and it would, I think, be pressing his omission to a most unreasonable extent, to say, that he shall not only lose his title resting upon the warrant, but that he shall also be regarded as surrendering to the state, any title, however good, and absolute, which he may have possessed previously. Suppose, after taking out the warrant of 1836, he discovered, or was advised, (as is probably the case,) that his title to "Craney Island" was good, as founded either upon the patent for "Grimes' Ditch" or upon the long possession of himself, and those under whom he claims. Is there any principle of law or justice which would compel him at the hazard of forfeiting his title, to go on with his warrant? Why should he be required to pay the state for land which he discovered belonged to him already? Or why should he be compelled to take a new title, subject to all the risks and disadvantages which its recent origin would bring with it when he ascertained he already held a title, sanctified, and confirmed by nearly a century

The caveator then having, in my opinion, a good title to
43

"Craney Island," the land embraced in the survey of Mr. Hoskins', binding upon the island, if the waters gradually recede, or accretion is formed by alluvion, the caveator's title as riparian proprietor attaches upon it, and as long as the waters of the river flow over it, the grant would be barren of fruits, because any obstruction of the navigation, or fishery, would be contrary to the common right.

But it is said this court has nothing to do with the question of any injury which may result to the caveator or other persons from an abuse by the caveatee, of his patent, if one issues to him ; and that for such abuse, he would be amenable in a different form of proceeding, and in another *forum.* It is certainly true, that if a patent is issued to Mr. Hoskins for land covered by navigable water, and he should, by any act, obstruct the navigation, or interfere with the right of fishery, he would be responsible for such act in the appropriate tribunal, and his patent would afford him no protection.   But does it therefore follow, that this court will grant him a patent when it was manifest it can avail him nothing, unless the waters of the river, from some cause, should cease to occupy the land it now covers ? or unless in derogation of the acknowledged right of the public to fish in, or navigate them, he should place obstructions in them ?

If the waters should gradually fall back from the land, or there should be an accretion by alluvion, the owner of the adjacent land would be entitled to the soil thus formed ; or if the patentee of the land covered by the water, should appropriate the water flowing over it, exclusively to his own use, or prevent or interfere with the free use of it by the public for purposes of navigation or fishing, he would be exercising a right which the state has neither the power nor the inclination to confer upon him ; and hence it seems to follow that a grant under such circumstances, can confer no substantial right.   Its only effect would be to tempt the grantee into a contest with the riparian owner, for land which if found within the limits of the patent, would belong to the latter, or to interfere with a public right, which the state can neither destroy or impair.

It is urged, however, that the owner of "Craney Island" has no right of exclusive fishing in these waters, and this is certainly true. But Mr. Hoskins does not require a patent from the state, to secure him in the privilege of participating in this right. It exists independently of patent, and may be enjoyed by him in common with other citizens.

Again, the counsel for Mr. Hoskins call to their aid the rule of the land office, that in doubtful cases it is usual to let the patent issue. This is believed to be the general rule, because as the decision of the Chancellor, on a *caveat*, is final, without appeal, if he refuses the patent, the party applying for it is concluded ; whereas, if the question can be left open after the patent ‛has issued, so as to be brought before a court of law, in an action of ejectment, or in some other way, or before a Court of Chancery by a *scire facias*, to vacate the patent ; the effect is to give the party the benefit of an appeal, which in case of difficulty or importance, is entitled to consideration. But if from the nature and circumstances of the case, the decision of the Chanceller upon the *caveat*, must be final either way, or at least if there is no ready or convenient mode of bringing the questions decided by him before a court of law, or equity, so as to subject his judgment to revision before a superior tribunal, then, as I conceive, it is his duty to decide the case upon the best judgment he can form, and the rule which has been mentioned is inapplicable.

This case, it appears to me, is one of that description ; because I do not see how it is possible to try the efficacy or validity of the patent, if one issues, either in an action of ejectment, or in any other form of action, in a court of law, or by *scire facias*, or information in a court of equity. It is clear, I think, that Mr. Chapman could not bring an action for the land included in this survey, so long as it is covered by water, because whilst so covered, he has no possessory right thereto, nor could the sheriff put him in possession. Neither could Hoskins institute such a proceeding against Chapman, because the latter is not in possession, nor in its present situation, does he claim any exclusive title to it. His position being, that so long as it

is covered by the navigable waters of the river, it is not grantable, or if grantable, it must be subject to the *jus publicum*, which the state has no power to impair, and that if hereafter the waters should recede from the shore, or there should be any increase of the land from alluvion, his rights as riparian proprietor attach to it. But until then, and so long as the waters flow over the land, which may be for an indefinite period, no mode exists by which the question can be brought before a court of law, and it is not perceived, upon what ground the patent can be called in question in a court of equity because there could be no pretence that there was either fraud, surprise, or undue advantage taken in procuring it. It would present a case, therefore, in which the state would grant a patent, which would confer upon the grantee no valuable right, but which would hang like an incubus over the rights of another person, without giving that person an opportunity of removing it. Such a course surely can find no warrant in the principles of equity, which furnish the rule of decisions in this court, in the absence of positive law upon the subject, or when the law of the land office does not prescribe the rule.     *Cunningham* vs. *Browning*, 1 *Bland*, 326 ; *The Rail Road* vs. *Hoye*, 2 *Bland*, 263.

The case of *John M. Carpenter* vs. *Mandus*, decided by the late Chancellor, in the land office, in 1845, has been cited as conclusive in favor of the right of the caveatee in this case. But it appears to me distinguishable from it in several material particulars. In the first place, the land for which the patent issued, was in some states of the tide, above the water. That it was an island, and the depositions taken in that case, show that improvements were made upon it by the caveatees, and there was no pretence, that by making these improvements, they interfered with the rights of navigation and fishing. And in the next place, Mr. Carpenter, the caveator, whose land lay on the Virginia side of the river, from which the island was separated by its navigable waters, had and could have no claim to it, as riparian proprietor. That case, therefore, is not like the present.

Upon the whole case, therefore, my opinion is, that no patent

should issue upon this certificate, and I shall, therefore, rule the *caveat* good, but as the question is a new one, and doubts may be fairly entertained in regard to it, I will not subject the party to costs.

ROBERT J. BRENT, } for the Caveator.
GEORGE G. BRENT, }