# MANOR MINING & MANUFACTURING COMPANY

## *vs.*

## EDWARD H. SINCELL AND JOHN T. MITCHELL.

*Land Office : appeals; patent for vacant lands.*

An appeal was taken from the ruling of the Commissioner of the Land Office, deciding that the patent applied for, for certain land alleged to be vacant, was valid and should issue as prayed; the evidence in the case was considered by the Court of Appeals and the ruling of the Commissioner affirmed.      p. 365

*Decided June 26th, 1913.*

Appeal from the Commissioner of the Land Office (Hanson, Commissioner).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, PATTISON, STOCKBRIGE and CONSTABLE, JJ.

*E. McClure Rouzer* and *Albert A. Doub* (with whom was *Jacob France* on the brief), for the appellant.

*John T. Mitchell* and *Edward H. Sincell,* for the appellee.

CONSTABLE, J., delivered the opinion of the Court.

A special warrant was issued by the Commissioner of the Land Office, at the instance of Edward H. Sincell, directed to the County Surveyor of Garrett County, authorizing him to survey and lay out a certain tract of land in Garrett County alleged to be vacant. In pursuance of said warrant Alexander C. Mason, the surveyor of Garrett County, after complying with the requirements of law, surveyed the alleged vacant tract of land and returned to the Commissioner of the Land Office the certificate of survey, to which was attached a plot of the same. Subsequently Edward H. Sincell assigned a one-half interest therein to John T. Mitchell and directed that upon the issuance of the patent for the same it should be issued to him and John T. Mitchell as tenants in common. Thereafter the Manor Mining and Manufacturing Company filed a caveat, protesting against the issuane of the patent.

Upon a hearing before the Commissioner an order was passed dismissing the caveat and ordering the patent to issue. From that order the caveator has appealed.

The grounds of the appeal are (1) that the land described in the certificate of survey is not vacant, (2) that the survey was not made in accordance with the rules of the Land Office and the laws of Maryland and (3) because it would be unjust to the caveator to have a patent issue.

The land in this case alleged to be vacant, consisting of fourteen acres and ninety-six square perches, has a width of two and one-half perches and is located between a tract of land called Crotia on the north and a tract called Fairleigh on the south. These two tracts are composed of several parcels of land, each of fifty acres, which were a portion of over four thousand lots surveyed and laid out west of Fort Cumberland in 1788 by one Francis Deakins, acting in virtue of a resolution of the General Assembly. The purpose being to grant these lots to officers and soldiers of the Revolutionary Army as bounties of land previously promised to encourage recruiting. Mr. Deakins upon the completion of the survey

returned a general plot of the country westward of Fort Cumberland, on which, with other tracts, were laid off these four thousand lots, called Military lots, and two books containing all the certificates of survey of these Military lots. By the Act of the Legislature 1788, Chapter 44 (November Session), this plot and the books of certificates were lodged in the Land Office, and the books of certificates were therein authorized to be considered to all intents and purposes as record books of that office.

The contention of the caveatees is that the certificate of survey for these Military lots as well as certificates of resurvey of the tracts Crotia and Fairleigh show that there is this strip of land not embraced in any or either of these aforesaid tracts. The caveator on the other hand contends that a portion of the strip is contained in the lines of the original Military lots now owned by it. And that if any of the part intended to be patented is embraced in a former survey then the patent for the whole must be refused. This principle of law is not open to question. The caveator owns two of the Military lots about the eastern end of the tract claimed to be vacant; one lot being north of the strip and the other south. The one on the north being a part of Crotia and the one on the south a part of Fairleigh. The one on the north is numbered 361 and the one on the south 287. The contention of the caveator being that the south line of the former is the north line of the latter. In other words that the two tracts are contiguous, and there is no vacant land between them as claimed by the caveatees. To support the issues raised by the caveat, testimony was taken before the examiner of Garrett County by the respective parties, and several certified copies of deeds, certificates of survey of the Military lots made by Deakins and certificates of resurvey of Crotia made in 1840 and of Fairleigh made in 1853, were filed as exhibits and returned, and are now contained in the present record. The only witness, produced by either party, bearing upon the question of the fact of the vacancy was Mr. Mason, the

County Surveyor of Garrett County, who was produced upon behalf of the caveatees.

We have considered closely and carefully all the testimony offered on this point including a careful study of the certificates of survey in connection with the plats offered, and have arrived at the conclusion therefrom that this land claimed by the caveatees is vacant land.

Briefly stated we have reached this conclusion for the following reasons: In the first place, the plot filed by the caveator, assuming it to be a correct copy of the one made by Deakins, shows the lots of the caveator, before mentioned, numbers 361 and 287, to be contiguous. If a true running of the lines of the certificates proves a variance between them and the plot the variance must be determined in favor of the correctness of the certificates. Irrespective of the true location of the corners and the beginnings of the different Military lots, concerned in or about this tract of land, the certificates of survey and resurvey show clearly, because of the relative position of the tracts and lots, that wherever the lots Nos. 361 and 287 may be situated there is between them on the south and north sides respectively a space of two and one-half perches. The beginning for the first line of Lot 361, which is the south boundary of that lot, is fixed as being twenty-two perches due north of the end of the first line of Lot 359 which last line coincides its entire length of 89½ perches with the first line of Lot 358, the said first line being extended further west 26½ perches. The course of the first line of Lot 361 is given as due west. The eleventh line of Fairleigh runs north nineteen and one-half perches from the end of the first line of Lot 358 or the first line of Lot 359 extended, and with the first line of Lot 287. The second line of Lot 287 which is the north boundary of that lot runs due west from the end of the eleventh line of Fairleigh, also being the end of the first line of Lot 287. Therefore since the beginning of the first line of Lot 361 is 22 perches north of the first line of Lot 358 and the beginning of the second line

of Lot 287 is north 19½ perches from the same line, the beginning point of Lot 361 must be two and a half perches north of the beginning point of the second line of Lot 287. Since these two lines run due west they must be parallel and therefore the distance between them throughout is two and a half perches. The extension of the first line of Lot 361 to the west is the 14th line of Crotia and forms a straight line; and the extension of the second line of Lot 287 to the west is the 12th line of Fairleigh and is a straight line. Therefore these lines are parallel and it follows that there must be an open space of two and a half perches between these two lines of Crotia and Fairleigh or of the lines of the Military lots forming these lines. We further find that the surveyor has properly located the original beginnings and lines of the Military lots and that the lines constitute the boundaries of this vacant tract, as laid down in his returned plot.

As to the objection that the surveyor violated the rule of the Land Office, which provides, that "Nor are you to return to the Land Office any plot or certificate for land of which either you or your assistant has not actually measured every line," we think it is clear from a reading of the entire testimony of Mr. Mason that there was a sufficient compliance with the rule to remove any reasonable objection. His testimony shows that he did not actually survey every line at the time of the execution of the special warrant in this case, but some of the locations had been made by him on former surveys. We think if all of the lines were surveyed by him before the return of the certificate and plot, as he testified, it is immaterial whether they all were actually done so at the time of the execution of the warrant or not. The important thing is that all lines shall be measured, and if they have, all requirements of the rule have been met.

The caveator contends further that assuming a vacancy exists and that the proceedings have been regular, still a patent should not issue in this case for the principal reason that one of the caveatees, John T. Mitchell, was its attorney

and agent in the purchase by it of Lot 287, and failed to dis-
close that he knew or had reason to believe that a vacancy
existed between this lot and another owned by it. That Mr.
Mitchell knew of the alleged vacancy is apparent from the
fact that two special warrants for this same tract of land
were issued to him and the other caveatees four and five years
before the purchase of Lot 287, neither of which was exe-
cuted. The testimony of the only witness, Mr. Frick, presi-
dent of caveator company, is so meagre and indefinite, that
we are not able to find from anything in it that Mr. Mitchell
is open to the criticism that the caveator makes of his con-
duct. There is, however, nothing contained in the record that
would justify the refusal of a patent to Mr. Sincell on any
grounds of improper conduct. And we cannot conclude from
any facts before us that the imputations of the caveator are
well founded.

We are of the opinion that the Commissioner of the Land
Office was correct in his ruling that the patent should issue;
and that whatever rights the caveatee has can be protected in
a Court of law or equity. *Kilty's Landholders' Assistant,* 372,
495, 496; *Cunningham* v. *Browning,* 1 Bl. 321; *Chapman*
v. *Hoskins,* 2 Md. Ch. 485; *Armstrong* v. *Bittinger,* 47 Md.
103; *Jay* v. *VanBibber,* 94 Md. 688.

*Order affirmed, with costs to the appellees.*