BANNER *v.* ELM, ET UX.

[No. 423, September Term, 1967.]

*Decided December 12, 1968.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN and SMITH, JJ.

*James J. Cromwell* for appellant.

*Lawrence A. Widmayer, Jr.,* for appellees.

SMITH, J., delivered the opinion of the Court.

Appellant (Banner) entered into a contract with appellee (Elm) for purchase of a lot in Montgomery County containing approximately 60,000 square feet for the sum of $18,000.00, computed at the rate of $.30 per square foot. Banner was employed as a real estate salesman by a broker in the area. On his own behalf he was engaged in a project of assembling land from individually owned parcels, securing the proper zoning, and developing the land.

Banner induced Nathan Levy, a salesman employed by the same broker, to approach Elm relative to purchase of the Elm land. Elm said Levy asked if he were interested in selling, Elm told him that he was, Levy offered $.30 a square foot and Elm accepted. A contract was ultimately signed. The contract provided for rezoning. This was accomplished, taking approximately 18 months. Settlement was set.

Apparently Elm was not represented by counsel until he was served with papers in a suit brought against Elm, Banner and others. This suit apparently was misinterpreted by all concerned, leading to the belief at that time that there could not be a conveyance. Elm told his attorney to notify Banner that he could not settle for this reason. Banner did not get the message and appeared at settlement.

Elm testified that had it not been for the suit he would have been willing to settle. He subsequently refused to settle and this led to this proceeding for specific performance.

The realtor was to receive a 10% commission. Levy had an agreement with his fellow salesman, Banner, by which Levy would pay to Banner a portion of his share of the commissions.

This case was tried in the Circuit Court for Montgomery County simultaneously with two other cases in which Banner sought specific performance. In one case the sales price was $1.00 per square foot and in the other, $.75 per square foot.

Levy was not the salesman on the other two cases. The same broker was involved, however. Elm contended and the trial court concluded that in each case the property owners did not know of Banner's connection with the broker and did not know there was to be a sharing of commissions between Banner and Levy and the other salesman.

In the two cases in which specific performance was granted it was granted on the condition that, in addition to the consideration provided in the contract, Banner was to also pay to the sellers an amount equal to the sales commission required to be paid by the sellers under the contract.

The chancellor declined to grant specific performance against Elm on the combination of circumstances involved in what the court regarded as an inadequate purchase price, non-disclosure of the broker-purchaser's role, and the 10% commission compared to 6% in the other cases.

Chief Judge Brune said for this Court in *The Glendale Corp. v. Crawford,* 207 Md. 148, 114 A. 2d 33 (1955) :

"The general rule with regard to specific performance of contracts for the sale of land has been stated

many times. Specific performance is not a matter of absolute right in the party but of sound discretion in the court. This discretion is not, however, arbitrary; and where the contract is, in its nature and circumstances, unobjectionable—or, as it is sometimes stated, fair, reasonable and certain in all its terms—it is as much a matter of course for a court of equity to decree specific performance of it as it is for a court of law to award damages for its breach." (citing cases). *Id.* at 154.

The contract here is certain in all its terms. There is no question about the amount of the consideration agreed upon nor as to the property involved.

Banner relies on the inadequacy of the purchase price. Our present Chief Judge Hammond said for this Court in *Brooks v. Towson Realty, Inc.,* 223 Md. 61, 162 A. 2d 431 (1960) :

"Restatement, *Contracts,* Sec. 367, comment b says : 'Mere pecuniary inadequacy of consideration will not generally make the terms of a contract seem too unfair for enforcement unless the degree of inadequacy is extreme.' The Maryland cases have said that mere inadequacy of consideration is not enough to cause refusal of specific performance. But, generally, the reference has been to factual situations where competent parties had agreed upon a price which was low, or which later events indicated was low, and in such instances bad bargains or a low price have been held not to be enough to deny specific enforcement. Cases are collected in a note in 65 A.L.R. 9. Cases showing that the majority rule is that mere inadequacy of consideration, without unfairness or overreaching in the procuring of the contract will not justify a denial of specific performance are collected beginning at page 86. The cases establishing the minority rule that inadequacy of consideration may be a sufficient ground for refusal to compel specific performance although the inadequacy would not be enough to entitle the defendant to a decree for rescission begin at page 89. In

many jurisdictions in which it is held that mere inadequacy of consideration alone will not preclude the specific enforcement of a contract, the courts hold that if the inadequacy is so gross that it shocks the conscience of the court, it is satisfactory evidence of an unconscionable and unreasonable contract and the court will not enforce it specifically." *Id.* at 71-72.

In *Straus v. Madden,* 219 Md. 535, 543, 150 A. 2d 230 (1959) we pointed out that if there be nothing but inadequacy of price involved, the inadequacy must be extreme in order to call for the interposition of equity, either offensively or defensively. In some respects this case seems similar to *Manning v. Potomac Elec. Power Co.,* 230 Md. 415, 187 A. 2d 468 (1963) where Judge (later Chief Judge) Prescott commented:

"The chancellor found the agreement was executed by Mrs. Manning without fraud, misrepresentation or other improper conduct on the part of the appellee or its agents, but that sometime after its execution, she came to the conclusion that she should have received more money, which was the real nub of her complaint. We agree." *Id* at 418.

It is undisputed in this case that no complaint existed on the part of Elm from the time he signed the contract in October of 1964 until the month of May or June in 1966. He became dissatisfied only when he found the selling price of other property. The inference is drawn from the record that the Elm land was unimproved while there appears to have been improvements on the other properties. This would make a difference in the selling price.

The property of Elm was purchased on October 27. The Cissel property was purchased on November 13 for $.75 per square foot. The Kindig property was bought on December 18 for $1.00 per square foot. Elm apparently did not take into consideration that, in putting together a tract, one is often obliged to pay more for later acquired parcels than for the first acquisition.

We are unable to find such inadequacy of price as would justify a refusal to grant specific performance.

Elm relies upon the finding by the learned chancellor of the trial court that there was an abuse of a confidential relationship by Banner in that Levy, the real estate salesman effecting the sale, and Banner were both salesmen of the broker who was to receive the realtor's commissions and that an agreement existed between Banner and Levy for division of the salesman's commission. If Levy were the agent of both Elm and Banner, then his actions would be censurable for, as said by our present Chief Judge Hammond in *Hardy v. Davis*, 223 Md. 229, 164 A. 2d 281 (1960):

> "During the term of the agency, a real estate broker cannot act for both vendor and vendee in respect of the same transaction because of possible conflict between his interest and his duty in such case, and he must disclose to his principal all facts or information which may be relevant or material in influencing the judgment or action of the principal in the matter. *Coppage v. Howard*, 127 Md. 512, 523; *Restatement (Second), Agency* Sec. 381." *Id.* at 232.

*Cf. Sears v. Polan's 5¢ to $1.00 Store of Annapolis, Inc.*, 250 Md. 525, 243 A. 2d 602 (1968).

In this case there is no evidence of any listing agreement between Elm and the broker. Levy came to Elm. An offer was made to Elm at that time. The contract says simply that Mr. and Mrs. Elm recognized the broker "as the agent negotiating this contract and agree to pay commissions for services rendered, as between the parties," in the amount of 10% of the sales price, the usual commissions for unimproved real estate as opposed to the 6% normally paid for improved real estate.

There is no showing here that Levy or the broker were the agents of Elm. On the contrary, they appear to be the agents of the purchaser. It is not uncommon for a condition of sale to be that the agent of the purchaser shall be paid by the seller.

Generally, where the broker is the agent of the seller there is nothing reprehensible in his agreeing to divide his commissions with the purchaser, as this is a personal sacrifice on the broker's part to further the interest of the principal and such

agreement is no defense to an action for compensation, even though his principal was kept in ignorance thereof. See *Restatement, Agency 2d*, § 391 b (1958), 12 Am. Jur. 2d *Brokers*, § 175.

Elm contends that it was a breach of fiduciary duty on the part of the agent, Levy, not to divulge the fact that he had contemplated sharing his commission with Banner, the purchaser, but cites no authority for this contention and we have found none.

The agent here being the vendee's agent, there was no fiduciary relationship between the vendor and the agent. Therefore, there was no duty to divulge the agreement to split the commissions with the vendee since such a duty is non-existent even where a fiduciary relationship between vendor and agent exists.

Elm contends that the contract was unconscionable and marked by oppression, sharp practice and overreaching. Elm points to no fraud. No fraud has been shown. We see no oppression and nothing unconscionable.

Viewing the record as a whole, we conclude that when Levy came to Elm with a proposal that Elm sell at $.30 per square foot this was not only a sale Elm was willing to make, it was a sale he continued to be willing to make for approximately 18 months thereafter. There were no illegal inducements to the sale. Accordingly, the chancellor erred in not granting specific performance.

> *Order reversed and case remanded for further proceedings not inconsistent with this opinion, costs to be paid by the appellees.*