JOSEPH H. FRIEND, and others vs. WILLLAM H. H. FRIEND.

*Trespass quare clausum fregit—Construction of Deeds—Boundary—Location.*

In trespass *quare clausum fregit*, the question as to the proper construction of a deed offered in evidence, and the consequent manner of its proper location, is exclusively for the Court.

It is a well settled principle of construction in respect to location, that metes and bounds in the description of the premises granted, control courses, distances and quantities, when there is any inconsistency or conflict between them.

APPEAL from the Circuit Court for Garrett County.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiffs offered eight prayers as follows:

1. That if the jury find from the evidence in the cause that the patent for the tract of land called "Kensington" was issued, and that the several deeds offered in evidence by the plaintiffs were executed by the grantors therein and delivered, and that the will of Elijah Friend offered in evidence was executed by him, and that the plaintiffs, and those under whom they claim, have been in continuous, exclusive, notorious, and adverse possession, for the space of twenty years before the bringing of this suit, of the part of land described in the deed from Rebecca Frantz and others to Elijah Friend, and that the grantors in said deed were the heirs-at-law of George Frantz, and that the plaintiffs and Emma J. Friend are the only heirs-at-law of Elijah Friend, then the plaintiffs have a good legal title to the same and are entitled to maintain this action against

the defendant; if they also find that he committed the alleged trespass within the lines of said deed to Elijah Friend as located by either of the parties, if they find said location to be correct; and if the jury find that the defendant with knowledge on his part, that he did not own the land at the place where the alleged trespass is charged to have been committed, nevertheless went on the said land, and there did the acts relied on in this case, as the trespass complained of, then the plaintiffs may not only recover to the extent of the actual damages sustained by the plaintiffs, but may recover exemplary or punitive damages to such extent as the jury may think reasonable under the circumstances of this case.

2. That if the jury find that the point shown on the plats at black A, is the true beginning of the tract of land called the Blooming Rose, and that the lines of said tract from one to sixteen inclusive shown by the plain black lines on the plats, numbered from 1 to 16 inclusive correctly located by actual survey on the ground, then such location by actual survey is the best evidence of the true location of the sixteenth line of said tract, but before the jury can find that the said sixteenth line is correctly located as stated above, they must find that the lines, courses and distances of Blooming Rose were run from the beginning with the true and correct variation of the compass.

3. That if the jury find that the plaintiffs and defendant in this case agree that said point, shown by black A on the plats is the correct beginning of said tract, then the only mode of ascertaining the correct location of the sixteenth line of said tract is by actual survey from said beginning, and its correct location cannot be ascertained in this case by protraction or by reversing any of its lines from objects not called for in its patent.

4. That if the jury find that the sixteenth line of Blooming Rose shown by the plain black lines as located by the plaintiffs is the true line of said tract, and correctly lo--

cated with a proper allowance for variation of the compass, then the plaintiffs are not estopped by any admissions or anything proven in this case, from claiming the line so located by them, as the correct line of said tract, or the line of Kensington and the deed to Elijah Friend.

5. That if the jury shall find from the evidence in the cause that the defendant has located the lines of the tract of land called the Blooming Rose, by protraction from the beginning at black A upon the plats, and that in locating the fifteenth line of said tract by protraction, the said defendant has extended the said fifteenth line in distance beyond the point to which it would stop according to the courses and distances in the patent for said tract called the Blooming Rose, and should further find that there is no call at the end of said fifteenth line in the patent, then that the said defendant has not properly located the sixteenth line of said tract of land called the Blooming Rose.

6. That if the jury shall find from the evidence in the cause the matters stated in the plaintiffs' fifth prayer, and shall further find that the deed from Ira Friend to the defendant offered in evidence, calls to begin at the end of the sixteenth line of the tract called "The Blooming Rose," that the said deed has been located from the birch tree at black W, that then the defendant has not properly located any deed showing title in him for any part of the land upon which the trespasses are claimed to have been committed, and said deed is not properly located.

7. That if the jury shall find from the evidence in the cause, that the patent for the "Resurvey on Blooming Rose" calls for a maple tree at the end of the sixteenth line of said tract, and that no such maple tree now stands at the end of said line as located by the defendant, and that there is no testimony to show that it ever did stand at the point black T, as located by the defendant, and that the defendant has extended the said fifteenth line beyond the distance to which it extends and reaches by the descrip-

tion in said patent of said line to black T, then the said defendant has not properly located said tract of land called the "Resurvey on Blooming Rose."

8. That if the jury shall find that the first line of the deed from Rebecca Frantz and others to Elijah Friend, under which the plaintiffs claim part of the tract called "Kensington," calls for a hickory standing at the end of seventy perches on the sixteenth line of "Blooming Rose," and that said hickory stands at the point black I, as indicated on the plat, and that the next line of said deed calls to run with a part of said sixteenth line of "Blooming Rose," S. 11°, W. 120 8-10 perches to a stone and two maple saplings, and that said stone and two maple saplings stand at black J upon the plats, and shall further find that the plain black line from black E to black F, is part of the sixteenth line of the tract called "The Blooming Rose," is correctly located, then the jury may interpolate the lines from black I to black E, and from black F to black J, although said lines may not be mentioned in said deed from Geo. Frantz' heirs to Elijah Friend, the father of the plaintiffs, in order to gratify the calls of said deed to run with the sixteenth line of the "Blooming Rose." But the jury are further instructed that before these lines can be so added to the lines of the deed, by them, it is incumbent on the plaintiff to satisfy the jury that the said sixteenth line of "Blooming Rose" has been correctly laid down and located on the plats by the plaintiffs, with a correct allowance for the variation of the compass.

The defendant offered five prayers, all of which were rejected, except the fourth, which was as follows:

4. That if the jury find from the evidence that the hickory tree located on the plat at black I is the hickory called for at the end of the first line of the deed from the Frantz heirs to Elijah Friend, the father of the plaintiffs, and that the stone and two maple saplings located at black J on the plat, are the stone and maple saplings called for at the

end of the second line of said deed, and that the fence located as running from black J to black S, by both plaintiffs and defendant, is the division fence between the Forsythe part of Kensington and the Elijah Friend part mentioned in the deeds, and if they further find that the surveyor, Switzer, ran the division lines between the Frantz heirs and Forsythe, and started at the hickory at black I, and ran a direct line from thence to the stone and maple at black J, said direct line being shown him as part of the sixteenth line of "Blooming Rose" as testified to by him, and ran the dividing line along the division fence, from black J to black S; from thence to black U, and thence to black V, the call at the end of the third and fourth lines of the deed under which the plaintiffs claim, then they must find that the defendant has correctly located said deed according to the true meaning of its courses, distances and calls. And if they further find that Elijah Friend entered upon his part of Kensington and took possession thereof under said deed, with full knowledge of the location of the said hickory and the maples on the ground, and recognized the hickory at black I as a corner of his land, and also recognized the line (located by defendant as the sixteenth line of "Blooming Rose") run from said black I to black W, running past or by black J in a straight course as the division line between his part of Kensington and the tract called the "Blooming Rose" as occupied by the defendant and those under whom he claims, then that the plaintiffs are not entitled to recover in this action unless they find that the acts complained of as trespasses in this case were committed within the lines of the said deed.

The Court (SYESTER, and HOFFMAN, J.,) granted the first, second, seventh, and eighth prayers of the plaintiffs, and the fourth prayer of the defendant, and rejected the third, fourth, fifth and sixth prayers of the plaintiffs, and the first, second, third and fifth prayers of the defendant. The plaintiffs excepted, and the verdict and judgment being against them, they appealed.

The cause was argued before ALVEY, C. J., MILLER, IRVING, RITCHIE, and BRYAN, J.

*R. H. Gordon,* and *J. H. Gordon,* for the appellants.

*T. J. Peddicord,* and *R. T. Semmes,* for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

This is an action of trespass *quare clausum fregit,* brought by the appellants against the appellee. The claim and pretension of the respective parties made the case turn exclusively upon the correct location of the division line between the land of the plaintiffs on the one side and that of the defendant on the other. A warrant of resurvey was executed, and the result was the return into Court of a very extensive plat of diversified locations; some made by actual survey on the ground, and others simply by protraction on the plat by course and distance, according to scale.

The *locus in quo* is alleged to be in that part of a tract of land called Kensington, embraced within the lines of a deed from Rebecca Frantz and others to Elijah Friend, dated the 6th of October, 1866; the plaintiffs claiming under Elijah Friend, the grantee, (who died in 1869,) and by virtue of the deed to him. That tract of land Kensington was patented in 1831, and was a resurvey of four contiguous military lots, Nos. 2970, 2972, 3138, and 3139, reducing them into one tract. The military lots were located in 1787, by authority of the Legislature of the State, and lot No. 3138 called to begin at the end of 70 perches on the 16th line of a tract of land called The Blooming Rose, (a tract that had been located in 1774, though not patented until 1793,) and to run south 11 degrees west, 92 perches, &c.; and lot No. 3139 called to begin at the end of the first line of lot No. 3138, and to run south 11 degrees west, 114 perches to a bounded chestnut at the end of the 16th line of Blooming Rose, then, &c.

The patent for Kensington called to begin, for the outlines of the tract, at the beginning of lot No. 2970, and reversing the given line thereof, and running with the given line of lot No. 3138 east, 200 perches, then with the first line of the last mentioned lot, and with the first line of lot No. 3139, south 11 degrees west, 206 perches, then with the second and third lines of the last mentioned lot west, 62 perches, &c.

The deed from Rebecca Frantz and others to Elijah Friend, being for part of Kensington, calls to begin at the original beginning of Kensington, being a stone standing at the beginning of lot No. 2970, and running thence with the given lines of lots 2970 and 3138 reversed, east, 200 poles to a bounded hickory tree, standing at the end of 70 poles on the 16th line of Blooming Rose, then with a part of that line of Blooming Rose south 11 degrees west, $120\frac{8}{10}$ poles to a stone and two maple saplings, then north 58 degrees west, $211\frac{1}{10}$ poles to a stone standing at the end of 11 poles on the first line of lot No. 2970, then north, 11 poles to the beginning, containing 79 acres.

As will be observed, this deed has but four lines to enclose the area conveyed, and the whole controversy hinges upon the proper location of the second line,—that running from the hickory tree standing at the end of 70 poles on the 16th line of Blooming Rose, course, south 11 degrees west, distance, $120\frac{3}{10}$ perches, to a stone and two maple saplings, now stumps. This deed is of recent date, for a small piece of land in an open cultivated country, and the outlines of which were actually surveyed by and were perfectly familiar to living men, who were present at the trial as witnesses to identify the calls of the deed. In such case one would suppose that the lines of the deed would be of easy and inexpensive location; and it certainly is remarkable that it should have been deemed necessary to make such an extensive survey, and so complicated a plat as to require some thirteen large closely-printed pages of the

record to contain the explanations of the different locations made, as we find returned by the surveyor under the instructions of the parties. That much the larger portions of the locations made were wholly immaterial and unnecessary, will be made manifest upon the application to the case of a few plain and well-settled principles of location, as the means of effectuating the intent of parties to deeds or grants of land.

The deed from Frantz and others to Friend is quite free from ambiguity; and the question of its proper construction, and the consequent manner of its proper location, is exclusively for the Court. And it is a long since settled principle of construction in respect to location, that metes and bounds in the description of the premises granted control courses, distances, and quantities, when there is any inconsistency or conflict between them. This rule of construction is founded upon the principle that those particulars are to be regarded and preferred in which error is *least* likely to occur. And therefore the most material and certain calls must control those that are less material and certain in the location of the lines of description. These rules of construction are well illustrated, and their application shown, in the cases of *Thomas' Lessee vs. Godfrey*, 3 *G. & J.*, 143, and *Wilson vs. Inloes*, 6 *Gill*, 121.

In this case there is no dispute in regard to the true location of the beginning of the tract called Kensington, and consequently no disagreement as to the location on the plat of the beginning called for in the deed to Friend, under which the plaintiffs claim; nor is there any dispute as to the location on the plat of the hickory tree, called for at the end of the first line of the deed; the point of beginning being designated on the plat as at L, and that of the hickory tree at I. Nor is there any serious question made as to the identity of the stone and two maple saplings, (now stumps,) called for at the end of the second line of the deed, as located on the plat at J. Both parties have

made their locations with reference to all three of these calls as located and thus designated on the plat, and by so doing have conceded the correctness of their location. Indeed the unquestioned evidence would seem to leave no room for doubt as to the identification of these calls, and their correct location at the points designated on the plat, by the letters named respectively. But the mode adopted by the plaintiffs of locating the first and second line of the deed was justified by no principle, in view of the facts of this case. Instead of commencing the location of the deed at the place of beginning, a known and conceded point, and running to the hickory tree at I, also a known boundary, and thence to the stone and two maple stumps at the end of the second line, they commenced their survey at A, the beginning of Blooming Rose, and ran the first fifteen lines of that tract, and to the end of 70 perches on the 16th line thereof, terminating at black E, as located on the plat, by courses and distances simply and exclusively, and with an allowance for variation of the needle, not shown by any legally sufficient evidence to be correct. From black E they ran, by reverse course, the first line of the deed to L, the beginning; but to do this it was found necessary to disregard the hickory at I, as a binding call, and to elongate the first line of the deed 12 perches and nine links. They then resumed at black E, and ran the distance of the second line by the course of the 16th line of Blooming Rose, as located by them, to F, and from thence interpolated a south-west line of the length of $15\frac{3}{10}$ perches to the stone and two maple stumps, at the end of the second line of the deed. And in support of this theory of the correct mode of locating the deed, the plaintiffs, by prayer, procured from the Court an instruction (8th prayer), that if the jury should find that the 16th line of Blooming Rose was correctly located, then *they might* interpolate the lines from the hickory at I to black E, and from black F to the stone and maple stumps at J,

although such lines were not mentioned or called for in the deed, "in order to gratify the call of said deed to run with the 16th line of Blooming Rose." This instruction was clearly erroneous; but the Court seems to have corrected the error, by granting the fourth prayer of the defendant. By this latter instruction the jury were directed that if they found that the hickory tree located at I is the hickory called for at the end of the first line of the deed, and that the stone and two maple saplings, located at black J on the plat, are the same called for at the end of the second line of the deed, &c., with further directions as to the running the other lines thereof, "then they *must* find that the defendant has correctly located said deed, according to the true meaning of its courses, distances and calls;" and further, after enumerating some immaterial facts, the jury were instructed that the plaintiffs were not entitled to recover, unless they should find that the acts complained of as trespasses were committed within the lines of the said deed. The defendant's location of the second line of the deed from Frantz to Friend was by a straight or direct line from the hickory at I to the stone and two maple stumps at J; and as the verdict was for the defendant, we must suppose that it was found in accordance with the fourth prayer of the defendant, as that prayer was the only one of the defendant's prayers that was granted.

It is objected by the plaintiffs that this fourth prayer of the defendant should not have been granted, because of its irreconcilable conflict with the construction placed upon the deed, as to the manner of its location, contained in the instruction given by the Court in granting the eighth prayer of the plaintiffs, and because, by this instruction given at the instance of the defendant, the Court disregarded the call in the deed that the second line thereof should run with a part of the 16th line of Blooming Rose, south 11 degrees west, $120\frac{8}{10}$ poles to the stone and two

maples, as that 16th line of Blooming Rose might be found located, with proper allowance for variation of the magnetic needle ; the plaintiffs contending that the call to run to and with that line, for the distance mentioned, is imperative and binding. But in this contention we do not agree with the plaintiffs.

The inconsistency between the two prayers granted is very apparent, but it does not follow that there was error committed in granting the prayer on the part of defendant. It was a question of the proper construction of the deed, and the manner of its location; and, as we have already stated, the settled principle is, that metes and bounds control courses and distances, and that the most material and certain calls control those less material and certain. The hickory tree at the end of the first line, and the stone and maples at the end of the second, are both material and imperative calls in the location of the deed, and must control the survey if they can be ascertained ; and the reference to the 16th line of Blooming Rose is merely directory. If all the natural or artificial calls of Kensington, or of the deed for part of that tract, were lost, this referential or secondary call, if properly located, would remain as a means of locating the junior tract; but not as an imperative and binding call, so long as the more certain and tangible objects called for can be correctly located. The defendant's location, therefore, of the second line of the deed, by a straight course from the hickory, at the end of the first line, to the stone and maple stumps, at the end of the second, was the correct location, and the Court was right in so instructing the jury.

This is so as well upon principles of reason as upon express decisions. In the case of *Thomas vs. Godfrey*, 3 *G. & J.*, 143, 151, it was declared by the Court, as a settled principle, that while it was the peculiar province of the jury to find facts and to ascertain the true position of the objects called for, from the evidence submitted to them, it

was the duty of the Court to determine, whether or in what manner a call in a deed or patent should be gratified. "Where," continued the Court, "a tract of land, or a line of a tract of land is peremptorily called for as the governing object, it controls the course and distance for the greater certainty. But where such a line is referred to, with a view to another object peremptorily called for, that object is the imperative call, and not the line referred to; and must be gratified, whether its position corresponds with the line referred to or not. As where there is a call to a tree, described as standing in, or at the end of a specified line of another tract of land, there the reference to the line is not considered as a peremptory call, controlling the call to the tree ; but the call to the tree is the imperative call, and must be gratified if it can be established, no matter where it stands, without regard to the line, which is to be taken as intended only as a *designatio loci, where the tree was supposed to stand.*" In that case the expressions of the calls were these ; "Beginning at a bound hickory, on the side of a hill, on the south side of the main falls of Patapsco, respecting to the west Chew's Resolution Manor, *and running with the said manor*, south 53 degrees west, 200 perches to a bound hickory, then northwest 340 perches to a bound white oak, then," &c. ; and it was held that the first line of the patent should be run from the first to the second bounded hickory, and that the expression "running with the said manor," did not constitute a peremptory call, but that the reference was directory only. Other cases could be referred to, but it is unnecessary.

The rejected prayers of the plaintiffs become quite immaterial in the view we have of the case. They all relate to the location of the lines of Blooming Rose, and as we have shown, the location of the lines of the deed from Rebecca Frantz and others to Elijah Friend does not at all depend upon the location of the 16th line of the tract of land called the Blooming Rose, as erroneously assumed

by the plaintiffs in all their prayers. The third and fifth of these prayers are correct enough in principle, but their rejection can furnish no ground for the reversal of the judgment. Nor could the conflict in the prayers granted in any way have prejudiced the rights of the plaintiffs. The jury were plainly instructed that if they found that any of the acts of trespass complained of had been committed within the lines of the deed as properly located, whether such location was made by plaintiffs or defendant, the former would be entitled to recover. As they found for the defendant and according to his location, it is a clear deduction that they found no acts of trespass of which the plaintiffs could complain. The judgment must be affirmed.

*Judgment affirmed.*

(Decided 20th November, 1885.)