CHARLES D. WOOD, ET UX. *v.* WILBUR HILDEBRAND, ET UX.

[No. 49, January Term, 1945.]

*Decided June 14, 1945.*

The cause was submitted to MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, HENDERSON, and MARKELL, JJ.

*Mudd & Mudd* and *F. De Sales Mudd* appeared on the brief for the appellants.

No appearance and no brief for the appellees.

HENDERSON, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Circuit Court for St. Mary's County (composed of three judges, sitting as a jury) entered in favor of the defendants below (appellees) in an action of ejectment. It appeared from the declaration that the dispute concerned the correct location and size of lot 24, in Levering's subdivision No. 1, Patuxent Beach, owned by the appellants. Upon motion, the court issued a Warrant of Resurvey. After this was filed there was a plea of not guilty.

The subdivision was originally surveyed and platted by Charles A. Heard, County Surveyor, on March 26, 1923, and the plat was duly recorded on May 1, 1923. The north line, fronting on the Patuxent River, had a total length of 1350 feet, according to the figures noted. It is also noted on the plat that the scale was 50 feet to the inch. However, the sum of the total frontages allocated to lots and streets (23 lots 50' wide, 1 lot 225' wide, and 5 streets 15' wide) was 1,450'; and, computing the frontage according to scale, the distance was only 1,400'. Actual measurements by the two surveyors who testified in the case show that the latter figure is correct. Either there are not 23 50' lots in the tract, or the 225' lot has a frontage of 50' less than that called for. According to scale, the frontage of lot 24 is only 175'. The lots are numbered from East to West and have a uniform depth of 200'. Access to the tract is from a county road to the East of the tract; on the western side St. Nicholas Creek enters the Patuxent River at an angle of about 45°. It is noted on the original plat that the distance from the Eastern boundary of lot 24 to the bank of the creek, along the back line, is 17'. There is marshy ground 50' in width between the bank of the creek and the water's edge at mean tide.

By deed dated June 14, 1940, the appellants acquired from Joseph B. Hansen, and wife, the property designated as lot 24 in the subdivision, according to the recorded plat, and more particularly described as follows:

"Beginning for the same at a post set on the bank and at the junction of St. Nicholas Creek and the Patuxent River, thence running with the bank of said River S. 77° E 225' to the N. W. cor. boundary Lot 23 in said Subdivision, same being also the N. E. cor. Boundary of Lot No. 24, the Lot hereby conveyed, thence following the boundary line between Lots 23 and 24 S. 13° W. 200' to the N. side of the street or driveway lying on south side of said subdivision, thence following the north side of said driveway N. 77° W. 67' to the shore of St. Nicholas Creek, thence with said creek shore N. $15\frac{1}{4}$° W. 338' to the beginning containing 69/100 of an acre of land, more or less." Hansen and wife had bought lot 24, under recorded contract of sale dated April 9, 1923. A deed dated November 17, 1924, was duly recorded. The descriptions in the contract and the deed correspond to the description in the appellant's deed.

The appellees acquired lot 23 by deed dated March 16, 1941, from James H. Cissel and wife, who in turn had acquired the lot from Mrs. Levering on October 21, 1925. It appears that lot 24 was the first lot sold after the original plat was recorded. The deed to the appellees conveyed lot 23, according to the recorded plat, more particularly described as follows:

"Beginning for the same at a post set on the North side of a street or driveway running on the South side of said Subdivision, a boundary of Lots 22 and 23 in said subdivision, thence running with the division line between Lots 22 and 23 in said Subdivision N. 15° E. 200' to a post set on the shore of the Patuxent River, thence running up said shore N. 75° 37' W. 50' to a post a boundary between Lots No. 23 and 24, thence South 15° W. 200' with lot 24 to a post set on the N. side of said street, thence with said street 50' to the point of beginning."

All of the posts along the Patuxent River, referred to in the deeds, have disappeared. It is agreed that the river bank has eroded to the extent of some 20', but that there has been practically no erosion along the creek. By reversing the lines and measuring 200' from the street or driveway, it was possible to locate the original line of the river bank, and the parties are in agreement as to the location of this line; the controversy is as to its length.

If the first line in the appellants' deed is taken at 225' from the point of beginning shown on the original plat, at the junction of the river and the creek as of 1923, it would necessarily include the entire front line of lot 23. Following out the description on this assumption, the 3d course and distance N. 77° W. 67' would reach the bank of the creek, but not the water's edge at mean tide. The 4th course and distance (specified in the deed but not shown on the original plat) N. 15¼° W. 338' would intersect the 1st line at a point 50' East of the point of beginning, and extend 110' beyond that line. In order to reach the point of beginning, it would be necessary to take a course N. 25° W., for a distance of 255'.

On the other hand, if the distance of the first line is taken at 175' (which is its actual length according to the scale of the original plat), then all of the courses and distances conform, except that the distance of the 4th line would be 228' instead of 338' to the place of beginning. Upon this assumption room would be found for lot 23, as referred to in the deed, and called for as a boundary.

The issue seems to be fundamentally one of fact; the conflicts in the descriptions cannot be wholly reconciled, and the problem is to reconstruct the survey in such a manner as would most closely approximate the intent of the parties. Certain rules of construction have been formulated in this connection, although these rules are not inflexible, but simply express the truth of common experience as to where error is most likely to occur. Calls for monuments, natural or artificial, generally pre-

vail over courses and distances. *Stewart v. May,* 111 Md. 162, 73 A. 460; *Friend v. Friend,* 64 Md. 321, 1 A. 865; *Heck v. Remka,* 47 Md. 68; *Rogers' Lessee v. Raborg,* 2 Gill & J. 54. Such calls are usually preferred for greater certainty, that is to say, because a surveyor on the ground might more readily make a mistake in reading an angle or chain, or in transferring the figures to his notes or to a plat, than in describing a fixed mark. Similarly, if there is an inconsistency between a course and distance to a given point, the course will control the distance. *Wilson v. Inloes,* 6 Gill 121. The line of an adjacent tract, if known and established, may as well be a call in a deed as a natural object. *Ramsay v. Butler, Purdum & Co.,* 148 Md. 438, 129 A. 650; *Hill v. McConnell,* 106 Md. 574, 68 A. 199. Quantity is ordinarily not controlling, unless there are no calls for monuments or for courses and distances set out in the deed. *O'Brien v. Clark,* 104 Md. 30, 64 A. 53. These rules seem to be recognized in all jurisdictions. But it is stated in 4 *Tiffany, Real Property,* 3d Ed., Sec. 994, p. 96: "When the courses and distances conflict, the whole description is to be considered to determine which conforms to the intention of the parties, and there is ordinarily no rule by which preference is to be given to one element as against the other."

The appellants contend that the instrument should be construed most strongly in favor of the grantee under the first deed, *Bryan's Lessee v. Harvey,* 18 Md. 113; *Wilson v. Inloes, supra,* and that since the amount of river frontage is the most valuable, the deed should be reformed so as to give them a frontage of 225'. But, while recognizing the rule of construction, we think the weight of the evidence supports the conclusion of the court below.

We take the view that the distance of 225' was in error. The scale of the original plat shows this on its face, and the course of the closing line N. 15¼° W. confirms it. The correctness of this course is likewise confirmed by the call to the shore of St. Nicholas Creek. The word

"shore" as used in conveyancing, when applied to tidal waters, has been generally held to describe the space between high and low water. *Potomac Dredging Co. v. Smoot,* 108 Md. 54, 60, 69 A. 507. In the case at bar, the call to the shore would place the end of the 3d line at the water's edge at mean tide, and include the marshy ground between the bank and that point. The description seems to use the word "shore," in connection with the creek, in contradistinction to the word "bank," in connection with the river frontage. The difference in the terrain is fully explained in the testimony.

This solution is confirmed by still other facts; it accepts the correctness of the back line of the entire tract, as shown upon the plat, both as to scale, figures and actual measurement, and it gives effect to the call to the Western boundary of lot 23. This solution requires a closing line of 228' instead of 338', but the distance of this line would have to be corrected upon either theory of the case. There is testimony that in the surveyor's figures, it would be easy to mistake a 2 for a 3. The fact that the grantee acquired less than the stated acreage is not entitled to much weight, because it was a mere computation in disregard of the 4th course, and in any event was qualified by the words "more or less." *Kriel v. Cullison,* 165 Md. 402, 169 A. 203. While the result is to deprive the appellants of river frontage which they undoubtedly thought they were acquiring, the mistake would have been readily apparent, if they had checked the plat at the time they acquired the property.

For the reasons stated the judgment of the court below will be affirmed.

*Judgment affirmed with costs.*