# DEVELOPMENT SALES COMPANY, INC.
## *v.* McWILLIAMS, ET AL.

[No. 328, September Term, 1968.]

*Decided July 11, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, McWILLIAMS, FINAN and SMITH, JJ.

*Barry I. Robinson* for appellant.

*Sol C. Berenholz* for appellee Wolman; submitted on brief by *Lloyd G. McAllister* and *Harold E. Leo,* for appellees James and Marian McWilliams.

FINAN, J., delivered the opinion of the Court.

In June of 1968, Judge McWilliams writing for the Court in *Assoc. Realty v. Cadillac Jack,* 250 Md. 371, 243 A. 2d 543 (1968) noted: "Once more we are engrossed in the arbitrament of a wrangle between a real estate broker and his customer."; to such a list, in the interim, we would add *Garfinkel v. Schwartzman,* 253 Md. 710, 254 A. 2d 667 (1969) ; *Thorpe v. Carte,* 252 Md. 523, 250 A. 2d 618 (1969) ; *Knopf v. Merc.-Safe Dep. & Tr.,* 252 Md. 293, 250 A. 2d 96 (1969) ; *Banner v. Elm,* 251 Md. 694, 248 A. 2d 452 (1968) ; *Cloney v. Pistorio,* 251 Md. 511, 248 A. 2d 94 (1968) ; and *Sellner v. Moore,* 251 Md. 391, 247 A. 2d 523 (1968). This is yet another dispute between a property owner and a real estate broker, all of which attests, if nothing more, to the intense activity in the real estate market in Maryland.

On April 13, 1967, Development Sales Company, Inc. (appellant), a Maryland corporation, filed a declaration in the Circuit Court for Baltimore County, against James McWilliams, Marian C. McWilliams, his wife, and Murray L. Wolman (appellees), seeking to recover alleged real estate commissions due the appellant in the sum of two thousand dollars ($2,000.00). The circumstances which brought about this suit are as follows:

In 1964, a licensed real estate salesman of the Development Sales Company, Mr. Merritt, contacted the appellee Wolman by telephone and advised him that he, Merritt, had a tract of ground which Wolman might be interested in buying. Wolman viewed the property and as a prospective purchaser, requested that Merritt try to assemble the three parcels of land, contiguous to each other, which constituted the tract. One of the parcels was owned by the appellees, Mr. and Mrs. McWilliams. In December, 1964, three contracts of sale were entered into

for the three parcels, contingent upon the obtaining of rezoning. One of the contracts was with Mr. and Mrs. McWilliams. It was dated December 31, 1964, with a $1.00 deposit, with an additional $800.00 deposit to be paid when and if rezoning was obtained within 18 months, which would have been June 30, 1966. In the event that rezoning was not obtained within 18 months, the contract provided that the buyer would be given more time with the consent of the owners (McWilliamses); otherwise, the contract was to come to an end. There was also a provision in the contract that if the sale was consummated, the sellers (McWilliamses) would pay Development a commission.

On June 30, 1966, the necessary rezoning had not become final. The Zoning Board had granted it, but an appeal had been taken and the case was pending before the Circuit Court for Baltimore County. Mr. Wolman was very desirous of obtaining the McWilliams' land and he contacted Mr. Merritt in that regard. Mr. Merritt was no longer with Development at that time but he testified that he might have spoken to Mrs. McWilliams and that she was reluctant to grant any extension. Mr. Merritt referred the matter to Mr. Robinson, the president of Development. It is the appellee Wolman's contention that Robinson did nothing about attempting to get an extension of the contract, while the appellant claims that Wolman requested that Development allow him, Wolman, to handle the obtaining of the contract extension. Mr. Robinson did testify that it was a fair statement to say that his office "had nothing to do with an extension of this contract." Thereafter, sometime during this period, Wolman, on his own, attempted to obtain a new contract from the McWilliamses. Wolman spoke to Mrs. McWilliams on several occasions and she finally referred him to her attorney, Mr. McAllister. Wolman met with McAllister several times and they were finally able to negotiate a new contract which called for a purchase price of $30,000.00 and obligated Wolman, at his own expense, to take the rezoning case to the Court of Appeals if nec-

essary to obtain the desired zoning. This second or new contract was dated August 23, 1966, approximately two months after the first contract had expired.

Settlement on all three pieces of land was held on March 13, 1967, at which time Mr. Robinson presented a bill for commissions for each of the tracts of land involved. No commissions were paid to Development on the McWilliams' tract and it is those commissions which are in dispute here.

On April 13, 1967, appellant filed its declaration in the Circuit Court for Baltimore County along with a motion for summary judgment supported by the required affidavit.

Appellees filed answers to the motion and the matter came on for hearing on January 9, 1968. At that time the lower court denied appellant's motion, but required appellees to file supplemental answers and affidavits within thirty days because their affidavits as filed were not sufficient, as they were not made on personal knowledge and did not present facts which showed a genuine dispute as to a material fact. Appellees filed the required supplemental answers and affidavits and the appellant's motion was then denied a second time.

The case was tried on the merits on October 7, 1968, in the Circuit Court for Baltimore County, before Judge H. Kemp MacDaniel, sitting without a jury. At the conclusion of the appellant's case, the appellees moved for directed verdicts which were granted. The lower court was of the opinion that as to the appellees, Mr. and Mrs. McWilliams, there had been an original contract which called for commissions, but that contract had expired and had not been extended. Therefore, there was no evidence that there was any commission due and owing by the McWilliamses to Development. As to the appellee Wolman (the purchaser), the lower court found that there was no legal responsibility on his part to pay a commission to Development and that there was no evidence that Wolman made any agreements to protect Development's com-

mission after the original contract ran out. Thereafter, appellant brought this appeal.

Appellant contends that, (1) the lower court erred in denying appellant's motion for summary judgment, and (2) that it was error to grant appellees' motions for directed verdicts.

Before reaching the merits of the case we will dispose of the threshold question concerning the lower court's allowing the appellees to amend their answer to the appellant's motion for summary judgment. We are of the opinion that the court below was not in error in granting the appellees leave to file supplemental answers and affidavits as Maryland Rule 610 d 2 clearly provides:

"Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as justice may require."

We think such an interpretation of the rule is in keeping with the opinion of this Court in *Jacobson v. Julian,* 246 Md. 549, 229 A. 2d 108 (1967), wherein we stated:

"While Maryland Rule 610 d 1 provides that when the moving party is entitled to judgment as a matter of law, the court should render judgment forthwith, that does not mean that entry of judgment may not be delayed for a reasonable time when, as here, the circumstances require it. Nor does the rule, as subsection d 5 states, limit or affect the power of a court to permit amendment of the pleadings at any stage of the proceedings, which pursuant to Rule 320 d 1 (b), should be freely granted in order to promote justice. And see *Lange v. Board of Education,* 183 Md. 255, 37 A. 2d 317 (1944) ; * * *." *Id.* at 554.

It should also be noted that the appellant offered no objection to the Court's first denial of the summary judgment with permission to the appellees to file supplemental answers and affidavits. The appellant in argument before this Court indicated that an objection had been filed in the nature of a letter addressed to the lower court; however, a reading of this letter which appears in the record makes it clear that it falls far short of being an objection to the court's action and, in fact, should more properly be characterized as an acquiescence to the court's action. The pertinent paragraphs of the letter dated February 8, 1968, read as follows:

> "At the time of the last hearing on the Motion for Summary Judgment, it was my recollection that you ruled that you would permit the Defendants to file amended Answers and Affidavits to the Motion within thirty (30) days; and at the time of the filing thereof you would enter it 'Motion Denied.'
>
> "I have talked with Mr. Berenholtz and he confirms this understanding. Accordingly, unless advised to the contrary, or unless the court wishes to correct its earlier ruling which permitted the Defendants to amend the improper affidavits, counsel assumes that the court wishes to abide by its decision at the initial hearing.
>
> "Thank you for your attention to this matter."

Passing to the consideration of the case on its merits, we find no error in the lower court's granting the appellees' motions for directed verdicts. We think that under the contract dated December 31, 1964, the appellant would unquestionably have been entitled to collect a commission from the McWilliamses as provided in the contract. However, we are of the opinion that the contract terminated according to its own terms and provisions when the zoning classification sought for had not been obtained within 18 months from the date of the contract, and no con-

sent to extend the contract or to further pursue the zoning reclassification was forthcoming from the McWilliamses. The contract was predicated on a contingency which was not fulfilled. Thereafter, the McWilliamses, as sellers, were free to negotiate with whomsoever they may have chosen to negotiate a new contract.

We find very broad language in the oft cited case of *Hill v. Iglehart,* 145 Md. 537, 125 A. 843 (1924) as to the freedom of activity accorded the owner of real estate to negotiate a new contract upon the failure of a former contract to reach consummation:

> "* * * [W]here such revocation is untainted by fraud or bad faith, the broker will not be entitled to commissions even though the principal after the revocation sells the property to a purchaser with whom the broker had been negotiating, and notwithstanding that the broker's efforts may have been the direct and procuring cause of such sale. *Howard v. Street,* 125 Md. 302; *Attrill v. Patterson,* 58 Md. 226; *Beale v. Creswell,* 3 Md. 201." *Id.* at 550.

See also *Knopf v. Merc-Safe Dep. & Tr., supra,* at 303.

In the instant case a new contract was entered into between Wolman and the McWilliamses. It was dated some six weeks after the expiration of the old contract. Although it covered the same property there were some differences. In the second contract the purchase price was fixed at $30,000.00, whereas in the first contract the price was $7,500.00 per acre and the amount of acreage was to be determined by a survey. A more significant difference, however, is found in the provision of the second contract wherein the purchaser (Wolman) was obligated to appeal any adverse ruling by the circuit court on the change in zoning to the Court of Appeals. Under the old contract, the purchaser in such event, had a right to cancel. But in order for the appellant to have a claim for a commission against the appellees under either of the contracts, it would have to show bad faith or collusion on

the appellees' part to defraud the appellant of its commission. The lower court found that there was no evidence of bad faith existing in this case, and under Maryland Rule 886 we should accept this finding of fact unless we deem the lower court to have been clearly erroneous and we do not so find.

The onus which is placed on the broker in a transaction such as this, where the parties with which he was dealing, after a first contract fails of consummation, enter into a new and second contract, was succinctly stated by this Court in *Leimbach v. Nicholson,* 219 Md. 440, 446, 149 A. 2d 411 (1959), wherein Judge Henderson (later Chief Judge), speaking for the Court stated: "The broker must establish however, that he is the primary, proximate and procuring cause, and it is not enough that he may have planted the seed from which the harvest was reaped."

In the instant case we cannot say that the lower court was clearly erroneous when it failed to find that the appellant was the primary, proximate and procuring cause of the second contract. Likewise, we think the lower court was correct when it found that the evidence in the record was insufficient to support a finding that the appellee Wolman had made any commitment or agreement with the appellant to protect its commission.

On the basis of what we have stated in this opinion we affirm the judgment of the lower court for the defendants (appellees).

*Judgment affirmed, appellant*
*to pay costs.*