JAMES W. RAMSAY *vs.* BUTLER, PURDUM & CO. ET AL.

*Description in Patent—Boundary Line—Grant by State— Caveat in Land Office.*

In a patent issued in 1696, a line described as starting from a tree named in a previous patent to one Smith, "and running along the said Smith's line into the woods southwest and by west five hundred thirty-four perches," *held* to run along said Smith's line as far as that line extended.                    pp. 440-442

If there has been one grant of land, and the land has already passed from the State, then, until it shall have been returned to the ownership of the State in some way, there can be no question of another grant.                    p. 441

A line called for is quite as controlling as any natural or artificial boundary.                    p. 442

Where, on appeal from an order sustaining a caveat to the issue of a patent, the question at issue, being one of the construction of original grants, is peculiarly for the court, it is improper to order the patent to issue merely for the purpose of having the caveator and caveatee contest their rights in a suit at law.                    p. 443

*Decided June 11th, 1925.*

Appeal from the Commissioner of the Land Office.

Application by James W. Ramsay for a patent, to which Butler, Purdum & Co., a corporation, The Harford Farms Company, and Louis M. Rosen and Katie Rosen, his wife, filed caveats. From an order refusing the issue of the patent, the applicant appeals. Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and WALSH, JJ.

*Arthur W. Machen, Jr.,* and *Wendell D. Allen,* with whom was *Newton D. R. Allen* on the brief, for the appellant.

*Benjamin Kann* and *Bernard J. Medairy,* for the appellee Butler, Purdum & Co.

*John B. Gontrum,* for the appellee Harford Farms Company.

*Herman T. W. Heimiller,* for the appellees Louis M. Rosen and wife.

BOND, C. J., delivered the opinion of the Court.

The appellant applied to the Commissioner of the Land Office for a patent to a triangular strip on the southern border of his land in Baltimore County, as a vacancy, and the appellees filed caveats on the ground that it had already been granted by the proprietary, and that there was therefore no vacancy which could be the subject of a new grant. The commissioner held with the caveators, and the caveatee appeals.

On November 10th, 1695, a patent was issued to Walter Smith for a tract of land named "Bear Neck," of five hundred acres, lying on the south side of Gunpowder Falls, and described as follows:

"Beginning at a bounded white oak standing on the south side of a high hill near to a place called Nen

Port thence down the said Falls southeast and by south two hundred and fifty perches to a bounded white oak standing on the south side of a branch called Cabbin Branch and running southwest and by west three hundred and twenty perches then northwest and by west two hundred and fifty perches thence straight to the first tree."

Four months later, on March 26th, 1696, a patent was issued to Walter Burgess for another, neighboring tract of five hundred acres called "Cubhill," and described as follows:

"Beginning at two bounded white oaks standing on the south side of a great branch descending into the said falls and running thence north west and by north one hundred and fifty perches to a bounded white oak by another great branch it being a bounded tree of Walter Smith called Bear Neck and running along the said Smith's line into the woods south west & by west five hundred thirty four perches then south east & by south one hundred & fifty perches then direct to the first tree."

The commissioner states, in an opinion filed with his decision, that the certificates of survey show that Thomas Richardson, surveyor of Baltimore County, made the original surveys for both of these patents. The certificates are not set out in the record.

It will be observed that the second line of each tract is to begin at a bounded white oak tree and to run thence southwest by west, and that the line of Cubhill is also designated as "running along said Smith's line into the woods." The Cubhill line on that side was to extend two hundred and fourteen perches beyond Smith's line on the same side.

It appears from deeds and surveys of later date that Smith's second line has for an indefinite period in the past been run, not straight throughout, but with a turn to the north, somewhat less than one degree, at a point 94.3 perches from the beginning of that line; and that, on the other hand, surveys and deeds, fence lines, and a hedge line, of land op-

posite the extension of the Cubhill line, and also one deed
of Cubhill land opposite Bear Neck, have taken this latter
line to run straight from the common point of beginning, so
that there has been a triangular strip left between the two
lines thus separated. There is testimony that three county
surveyors have found the Cubhill line to run straight and to
leave this strip between the two tracts as now outlined. Evi-
dence as to fences between the two in the past is in conflict.
There has been no evidence offered to show title to the strip
by adverse possession, the caveators relying, finally, on the
descriptions in the patents alone. The commissioner was of
opinion that the intention in the patents was clearly that the
second lines of the two tracts should be one and the same to
the full extent of the Bear Neck tract, and on that ground
considered the land already patented, and so refused the
patent now applied for. He considered the disputed area to
have been included in the Cubhill tract. The caveatee ob-
jects that this conclusion must be erroneous because it is
either inconsistent with the established Cubhill line to the
west of the Bear Neck tract, or, if that is to be left as it
stands, the Cubhill line in that part opposite Bear Neck
must, under the commissioner's holding, be broken and ad-
vanced over the disputed strip, so that the northerly bound-
ary of the whole Cubhill tract would be three lines instead
of the one intended in the description.

It is our opinion that the original grants themselves made
the two tracts contiguous to the full length of the Bear Neck
tract; that there was no vacancy left, and that the State has
no power now to grant the strip in dispute. The question is
solely one of vacancy; whether the land remains in the own-
ership of the State. If there has been one grant of it, and
the land has already passed from the State, then until it
shall have returned to the ownership of the State in some
way, there can be no question of another grant. *Tolson's
Lessee v. Lanham,* 2 H. & J. 175. The patents described
the adjacent lines of the two tracts as running from a com-
mon starting point, in the same direction, and as being con-

tiguous for their joint length. The words "running along said Smith's line into the woods" mean nothing less than contiguous. Smith's line is taken as the second line of Cubhill. In *Rogers v. Raborg*, 2 G. & J. 54, 63, a tract running certain courses and distances from a beginning point, but without further calls, and described as "joining on Lunn's lot," was held not limited to any line of Lunn's lot in disregard of the courses and distances. The expression quoted was construed as no part of the description of the land itself but as only indicating the general location of the tract. And in *Thomas v. Godfrey*, 3 G. & J. 142, 149, a tract was described as "beginning at a bound hickory on the side of a hill, on the south side of the main falls of Patapsco, respecting to the west Chew's Resolution Manor, and running with the said Manor, south 53 degrees west, 200 perches to a bound hickory," and of this expression "running with the said manor etc.," Chief Judge Buchanan, for the Court, said: "It is not the case of a course and distance line of one tract of land, calling to, or to run with, or bind upon, a water course, or another tract of land, or a line of another tract, with no ulterior object called for, and looking only to the water course, or other tract or line, as the definite object to be reached or run with, and to which the course and distance expressed, if not corresponding with it, is made to yield. But here, there is a fixed ulterior object, a tree imperatively called for and designated as the boundary intended to be run to." And upon this distinction the expression was held not meant to demand coincidence of lines of the two tracts.

The case now presented seems to stand exactly on the other side of Chief Judge Buchanan's distinction; it is one of a call to bind upon or run with the line of the other tract, without any ulterior object called for. A line called for is quite as controlling as any natural or artificial boundary. *Carroll v. Norwood*, 5 H. & J. 155, 163.

We are not prepared to agree that the original survey, if it differed from the description in the patent, and enclosed a smaller area, would control the grant. *Tolson's Lessee v.*

Md.]

*Lanham,* 2 H. & J. 175. But that question does not arise on the record before us, as there is no certificate of the original survey to show such a discrepancy. On the evidence before the court it would appear just as likely that a departure from the common boundary line occurred in subsequent surveys of one tract or the other; and that would not, of course, return the land left between the lines to the ownership of the State, so that it might grant it anew.

The appellant urges that there may, at least, be sufficient doubt or difficulty in deciding the point in dispute to render it desirable to issue the patent applied for and leave the parties to contest their rights in a suit at law. *Carswell v. Swindell,* 102 Md. 636, 640; *Railroad v. Hoye,* 2 Bland, 258, 263; *Chapman v. Hoskins,* 2 Md. Ch. 485, 495. But the question here seems to us to be peculiarly one of the construction of the original grants, which is a question for the court. "That belongs exclusively to the court, whose peculiar province it is to expound patents, according to the intention to be collected from the terms or expressions used." *Thomas v. Godfrey,* 3 G. & J. 142, 150. And, in our opinion, the effect of the descriptions used in the two patents would not be so doubtful as to justify deferring the decision.

*Order affirmed, with costs to the appellee.*