ALICE N. PARRAN *v.* SAMUEL T. WILSON ET AL.
[No. 7, January Term, 1931.]

*Decided April 23rd, 1931.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke and Sloan, JJ.

*Edward J. Colgan, Jr.,* with whom were *Karr & Colgan* on the brief, for the appellant.

*Walter C. Mylander* and *Nathan Patz,* with whom was *James M. Munroe* on the brief, for the appellees.

Sloan, J., delivered the opinion of the Court.

This is a suit for a trespass on land, in which the appellant contends that the fourth line of her deed shall be run by course and distance, while the appellees' contention is that the course and distance must be ignored and the line run to what they contend is a call. There are twenty-eight exceptions in the record, but, as this court is of the opinion that the appellees (plaintiffs) failed to produce any legally sufficient evidence of a call or monument at the end of the fourth line of the appellant's deed, the running of that line by course and distance would defeat the appellees' claim of a trespass on their land, and a verdict for the appellant should have been directed.

By deed dated September 28th, 1917, the appellees, Samuel T. Wilson and Kate E. Wilson, his wife, conveyed to the appellant, Alice N. Parran, a parcel of land on the Magothy river in Anne Arundel County "containing fifty acres of land, more or less," to the deed for which a plat was attached. The tract, according to both description and plat, contains fifty acres. The fourth line of the deed, which calls to begin at the end of the third line, a point which is not disputed, runs "north two degrees east, twelve hundred and thirty feet to a point in the center of the outlet of Robinson's pond," and the fifth line runs "thence with the center of the outlet of said pond, north fifty-six degrees east three hundred and seventy feet to the shore line of Magothy River." The evidence concerning the plat attached to the original deed is that the outlines of the land conveyed were as run and described, and that Robinson's pond was not located and

surveyed, but was sketched on the map by the surveyor without reference to its exact but to its approximate location and outline.

The appellees rely upon the testimony of a surveyor and civil engineer, Edward V. Coonan, to support their claim that "a point in the center of the outlet of Robinson's pond" is a monument or call to which the fourth line must be run and must end, and according to his location the fourth line would run "north eight degrees forty-five minutes east, thirteen hundred and thirty feet." As stated in the record, he "determined the center of the outlet because it was there. It was a physical thing up there. There was no necessity to determine it otherwise than go down and see it, the mouth of the pond." The fatal mistake in his testimony is that he undertakes to locate the center of the "mouth" of the outlet, whereas the description in the deed says nothing about the "mouth" of the outlet, and the deed itself shows what is meant by the outlet when, in describing the fifth line, it says "thence with the center of the outlet of said pond north fifty-six degrees east three hundred and seventy feet to the shore line of Magothy River." It is manifest from this language that the deed means and intends the "outlet" to be the channel or stream connecting the pond with the river. When the witness gave his location of the center of the mouth of the outlet, he was merely expressing his opinion as to what the deed meant, and was not testifying to a fact from which the jury could find a location for the fourth line of the deed, differing from its location by course and distance. It is the province of the jury "to find facts and to ascertain the true position of the object called for from the evidence submitted to them; but not to determine the question whether or in what manner a call shall be gratified, or any question of construction arising upon the face of the patent (or deed). That belongs exclusively to the court, whose peculiar province it is to expound patents according to the intention to be collected from the terms or expressions used, and not on matter or facts *aliunde*." *Thomas's Lessee v. Godfrey*, 3 G. & J. 142, 150. "In construing grants the courts are to re-

gard, and to be governed by, the intention of the parties, to be collected from the deed, if not incompatible with some rule or principle of law, and nothing extrinsic or dehors the deed is to be recurred to for ascertaining such intention, unless in the case of a latent ambiguity." *Carroll v. Norwood's Heirs,* 5 H. &. J. 163; *Ramsay v. Butler, Purdum & Co.,* 148 Md. 438, 129 A. 650.

As stated by Judge Alvey in *Jones v. Syer,* 52 Md. 211, 216: "It is perfectly well settled that the deed must speak for itself, and that its obnoxious provisions cannot be aided, modified or explained, by extrinsic evidence." It has been so frequently decided in this and other courts that course and distance must give way to calls and monuments that citation of authority is unnecessary. But in this case we are confronted with the question as to whether "a point in the center" of an "outlet" of a pond is a monument or call, which will control the direction and length of the fourth line of the deed. If that had been the only reference in the deed to the "outlet," we might have been called on to construe the meaning of the word "outlet" as applicable to the facts of the case, but the next line obviates the necessity of doing this, and in the deed the grantors (appellees) themselves call for the next line to run with the "center of the outlet of said pond three hundred and seventy feet to the shore line of Magothy River," so that the outlet by their own construction is a stream, channel, or connection, the center line of which is over a hundred and twenty yards long and the call or monument contended for by the appellees is a point in this center line. The rule of construction in such cases, as stated in 9 C. J. 161, is: "Where a natural monument is called for in the description of the boundaries of land, the identification of the object intended by the description is to be determined by a fair and reasonable construction of the whole instrument, regard being had in all cases to the true intent of the parties as expressed therein."

A monument is defined to be "some tangible landmark established to indicate a boundary." 9 *C. J.* 160. It is either natural or artificial. "Natural monuments are objects

permanent in character, which are found upon the land as they were placed by nature, such as streams, lakes and ponds, shores and beaches, also highways and streets, walls, fences, trees, hedges, springs and rocks, and the like." *Miles Land Co. v. Hudson Coal Co.*, 246 Pa. 11, 91 A. 1061, 1062; 4 *A. & E. Ency. of Law* (2nd Ed.), 764. Artificial monuments are those erected by the hand of man. 9 *C. J.* 162. "A line called for is quite as controlling as any natural or artificial boundary." *Ramsay v. Butler, Purdum & Co.*, 148 Md. 438, 442, 129 A. 650, 652. "Objects to be ranked as monuments must have certain physical properties such as visibility, permanence and stability; and definite location, independent of measurements." *Skelton, Boundaries and Adjacent Properties*, sec. 93.

What this court said in *Budd v. Brooke*, 3 Gill, 198, 223, in an opinion by Judge Dorsey, is aptly illustrated in this case, and that is: "The fact that the boundary called for is represented by the patent as standing upon a point at the mouth of a creek, is, in the event of its loss, too vague and indefinite to control the positive expressions of the grant, as to course and distance. By pursuing the course and distance, we have the fixed and specified means of obtaining the identity of the spot where the line is to terminate. To reject the course and distance, is to determine that the particular spot, on which the boundary stood, is ascertained with reasonable certainty. The statement in the patent, that it stood on a point at the mouth of a creek, is not, of itself, sufficient evidence of its identical locality. Such a point may be ten feet long, or it may be a mile long, and it may be subject to the same uncertainty as to its breadth. There is no semblance of analogy between such points and mathematical points. The expression, standing on a point at the mouth of a creek, identifies no particular spot as that whereon the tree called for stood. The expression in the grant is equally gratified whether you locate the tree on the north end, or the south end, the east side, or the west side of the point. The call for a bounded tree, standing on a point at the mouth of a creek, where the tree, and spot where it stood, are lost, and are

both incapable of ascertainment with a reasonable degree of certainty, ascertains with less certainty than the course and distance, the termination of the line, and, therefore, cannot control them; certainty being the controlling object in all locations."

In this case there is no evidence as to the location of "a point in the center of the outlet of Robinson's Pond," the center line of the "outlet" being a line three hundred and seventy feet in length, and, obviously, there could not be a location of such a point without a call for its location at a certain distance from the pond or the river. The appellees' witness undertakes to do this by stating what he thinks is the center of the mouth of the outlet at the pond, but when he does this he tries to locate the center of an object which is not mentioned in the deed, and his evidence is therefore not only legally insufficient, but is no evidence at all of a call at the end of the fourth and disputed line. The appellant's first prayer should, therefore, have been granted and a verdict directed for the defendant (appellant).

As this disposes of the case, the remaining exceptions do not require consideration.

*Judgment reversed, without a new trial, with costs.*

---

URNER and ADKINS, JJ., dissented as follows:

The plat which was made a part of the defendant's deed shows the fourth line as extending through the waters of Robinson's pond to the mouth of the outlet from the pond to Magothy River. In view of the conflict in the evidence as to the practicability of locating the fourth line at a definitely ascertainable point in the center of the outlet from the pond, in conformity with the call in the deed, we think the trial court was justified in submitting the question to the jury. It was, in our opinion, an issue of fact, which depended for its determination upon the evidence as to the

physical conditions existing at the place to which the inquiry was directed. For reasons urged in support of other exceptions, there appears to be sufficient ground for a reversal of the judgment, but we see no error in the refusal to withdraw the case from the jury, and we, therefore, dissent from the conclusion that a new trial should not be awarded.