72 A.3d 587

**John L. WEBB, Sr., et ux.**

v.

**G. Philip NOWAK, et ux.**

No. 83, Sept. Term, 2012.

Court of Appeals of Maryland.

Aug. 20, 2013.

William C. Wantz (Hagerstown, MD), on brief, for Petitioners.

Nicholas J. Nowak (Arnold & Porter, LLP, Washington, DC; Carl W. Disque of Carl W. Disque, P.C., Hagerstown, MD), on brief, for Respondents.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD and BELL,* JJ.

HARRELL, J.

An old adage claims that "good fences make good neighbors." The present case may stand for the corollary principle that disputes over fences virtually guarantee unneighborly outcomes.

---

* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

Petitioners, John and Ruth Webb (the "Webbs"), believe that they hold title to a 0.26–acre tract of land (the "Disputed Land") in Sharpsburg, Maryland. The Webbs contend that the Disputed Land is a part of three contiguous parcels acquired by the Webbs in 2000.[1] The Disputed Land abuts and shares its western boundary with property owned by Respondents G. Philip and Barbara Nowak (the "Nowaks"), who claim also title to the Disputed Land. The Nowaks acquired their property in 1988.[2] The parties dispute the location of the western boundary line of the Webbs' property (and, therefore, the eastern boundary line of the Nowaks' property), the resolution of which dispute will decide ultimately the rightful owner of the Disputed Land; hence this litigation.

On 11 August 2009, the Webbs filed suit in the Circuit Court for Washington County against the Nowaks. The timing of the filing of the suit was precipitated by the removal by the Nowaks of merchantable timber from the Disputed Land. The Webbs sought compensatory and punitive damages, as well as damages under a common law theory for trespass. The Nowaks filed a counter-complaint seeking, among other relief, a declaratory judgment that they hold fee simple title to the Disputed Land and therefore owe nothing to the Nowaks for the removal of the timber.

The parties' disagreements stem from conflicting interpretations of a 1928 recorded deed from the heirs of Samuel Miller to Alice Wolf (the "Wolf deed"), a predecessor owner in the relevant chain of title. The Wolf deed describes a fence in a certain location as constituting the western boundary line of the property conveyed to Wolf. During the first half of 2007,

---

**1.** The Webbs' properties are known commonly and designated as 17414 and 17416 Millers Sawmill Road. The three contiguous parcels are oriented north to south, run parallel to a private road, and are depicted as Parcels A, B, and C on Appendix A (based on tax map excerpt) to this opinion.

**2.** The Nowaks' property is known commonly and designated as 17550 Millers Sawmill Road.

the Nowaks commissioned Frederic M. Frederick, a local surveyor, to prepare a survey of their land (the "Frederick Survey").[3] The Frederick Survey located the western boundary line of the Webbs' property along the remnants of a fence line (the "Existing Fence"), approximately 300 feet west from a stake at the west side of the "County road" and running from the stake in a northwesterly direction. Frederick and the Respondents assert that the Existing Fence is the same fence described in the Wolf deed. A 2000 survey prepared for the Webbs (the "Zenith Survey"), by contrast, placed the contentious boundary line 77 to 140 feet beyond the Existing Fence. The Zenith Survey harmonizes with the Webbs' belief that the fence described in the Wolf deed ceased to exist at some point after 1928 and before 2000 and, thus, should be treated as a physical monument lost to antiquity, leaving the distance call in the Wolf deed as controlling. Thus, according to the Webbs, the western boundary line of their property extends beyond the Existing Fence described in the Frederick Survey. The Webbs contend that the Existing Fence did not exist in 1928.

The Circuit Court for Washington County entered judgment in favor of the Nowaks, finding, by clear and convincing evidence, that the western boundary of the Webbs' property was, in fact, the Existing Fence referred to in the Frederick Survey. The Court of Special Appeals affirmed in an unreported opinion. The Webbs filed a petition for writ of *certiorari*, challenging the judgment of the intermediate appellate court on the grounds that it not only erred in its determination as to the location of the disputed boundary, but also applied the incorrect standard of review in doing so. We granted the petition, 429 Md. 303, 55 A.3d 906 (2012), to consider the following questions:

1) Is the principle that the interpretation of a deed is a question of law to be considered de novo on appellate review

---

**3.** At the time the Nowaks retained Frederick, they were unaware of a 2000 survey commissioned by the Webbs regarding the Webbs' properties.

inapplicable in boundary disputes, as the Court of Special Appeals opined?

2) May the preference for monuments over courses and distances be applied to reduce the amount of a grant, as the Court of Special Appeals determined?

3) Was the trial court's interpretation of the deed incorrect?

## FACTUAL BACKGROUND

### A.  The Wolf Deed

The Disputed Land (and the undisputed land owned now by the Webbs and the Nowaks) was originally part of 236 acres acquired by Samuel Miller in 1883.  Miller's heirs sold from Miller's property a lot with frontage on a private lane [4] to Alice Wolf in 1928.  The private lane intersects Millers Sawmill Road on the latter's west side.  Millers Sawmill Road is referred to in the Wolf deed and subsequent relevant deeds as the "County road."  The conveyance from Miller's heirs to Wolf is the point of departure for the dispute between the Webbs and Nowaks.

The Webbs and Nowaks contest the beginning point of the front portion of the lot formerly owned by Wolf as described in the Wolf deed.  The calls of the boundaries in the Wolf deed are as follows:

Beginning for the same at a stake located on the **west side of the County road** leading to Sharpsburg, which said place of beginning is at a point one hundred and five (105) feet in a northerly direction from a large gate post located at or near said County road, and **[1] running thence in a westerly direction at a distance of three hundred (300) feet, more or less, to a stake at a fence** which said stake is located a distance of one hundred and five (105) feet, in a Northerly direction along said fence from the Northwest corner of the property of Elliott C. Long and **[2] running thence in a northerly direction along said fence a distance of**

---

4.  The private lane is referred to as a "private road" in the Wolf deed.

one hundred (100) feet to a stake [3] thence in a easterly
direction by a line parallel to the first line of this description
**a distance of three hundred forty (340) feet, more or less,
to the west side of a Private road,** which leads to the
aforesaid County road, and [4] thence along said private
road a distance of one hundred (100) feet more or less to the
place of beginning, together with a right of way to the
grantee, her heirs or assigns over the aforesaid private
road, as means of ingress and egress to said County road.

(Emphasis added; boldfaced bracketed numerals at the begin-
ning of each call were added by the Court of Special Appeals
in its unreported opinion in this case and are retained by this
Court.) [5]

### B.  The Webb and Nowak Properties

The Webbs own three abutting parcels.  They are referred
to by letter—from north to south along the private lane—as
Parcels "A," "B," and "C." Parcel A is a "panhandle lot," with
a mere 12 feet of frontage on the private road providing access
to the flared balance of the lot.  According to the Zenith
Survey (and the Webbs), Parcel A extends back 340 feet from
the private road along its northerly boundary.  At the end of
the 340–foot call, Parcel A's boundary then turns to the
southeast and extends 357 feet to the property's southwesterly
corner.  Parcel A's boundary line then turns to the east for
153 feet to the property's southeasterly corner.  Parcel A's
boundary then extends 88 feet to the 12-foot-wide "panhandle"
frontage that extends back in an easterly direction to the
private road.  According to the Webbs' estimation, Parcel A
extends an additional 139 feet farther to the west than does
Parcel B or Parcel C. Parcels B and C each have 50 feet of
frontage on the private lane and extend westerly from the
road for approximately 190–200 feet.  These two parcels are
each shaped, in essence, like parallelograms.  *See* Appendix A.

---

**5.**  In 1965, this parcel was subdivided to establish an additional lot
abutting the private lane.  The subdivision resulted in the current
"panhandle" shape of Parcel A. *See* Appendix A.

The Frederick Survey, by contrast, maintains that Parcel A is only 200 feet deep from the private road, instead of the 340 feet reflected in the Zenith Survey.

## PROCEDURAL BACKGROUND

On 11 August 2009, Petitioners filed an action in the Circuit Court for Washington County against Respondents for common law trespass and the destruction of merchantable timber under Md.Code (1973, 2012 Repl. Vol.), Natural Resources Article, § 5–409, which states, in relevant part:

Any person, his aiders, abettors, and counsellors, who willfully, negligently, recklessly, wrongfully, or maliciously enters upon lands or premises of another without written permission of the owner of the lands or premises, in order to cut, burn, or otherwise injure or destroy, or cause to be cut, burned, or otherwise injured, or destroyed, any merchantable trees or timber on the land is liable to the party injured or aggrieved in an amount triple the value of the trees or timber cut, burned, or otherwise injured or destroyed, plus the costs of any surveys, appraisals, attorney fees, or court fees in connection with the case. The damages are recoverable in a civil action, as in any other case.

The Webbs sought, *inter alia,* compensatory and punitive damages and counsel fees. Respondents filed a counter-complaint, seeking damages for trespass and a declaratory judgment that they owned the Disputed Land upon which the trespass was alleged to have occurred (based on their interpretation of title and a theory of adverse possession) and claimed damages for trespass. The actions were bifurcated and the declaratory judgment claim was set first for a bench trial. The Nowaks withdrew subsequently their claims for trespass and adverse possession. The declaratory judgment claim was tried before Judge Daniel P. Dwyer.

The surveyor who prepared the Zenith Survey died before trial. Petitioners, therefore, presented no testimonial evidence to the Circuit Court to explain directly their version of the discrepancy between the two surveys. Frederic Freder-

**674**

ick, the surveyor who prepared the Nowaks' 2007 survey, testified that, in his opinion, the description in the 1928 Wolf deed was erroneous. He stated that "the Wolf deed described the rear property line as running with a then-existing fence," a fence, Frederick opined, in 2007 at the time of his survey and at the time of trial, which still existed in remnants.[6] He further testified that Joseph Sybert, who subdivided Parcel A in 1965, determined that the western boundary line of Parcel A was along the Existing Fence line (in 1979, Sybert surveyed Parcels B and C and reached a conclusion that comported with Frederick's later determination as to the correct location of the western boundary lines of those lots). Frederick concluded that "there was no indication that a fence had ever been located in the location asserted by the Webbs."

Frederick continued that, "while the relevant portion of the Nowak property was no longer tilled, it had been so in the past and repeated plowings had resulted in troughs or swales indicating the edge of the cultivated area." Shannon Stotler, an employee of Frederick's who also testified at trial, stated that he observed such troughs in the ground along the location of the fence as posited by Frederick, but no such vestiges in the vicinity of the location urged by the Webbs. Thus, Frederick opined that the drafter of the Wolf deed erred in the third call *supra*, viz.: "thence in an easterly direction by a line parallel to the first line of this description a distance of three hundred forty feet, more or less, **to the west side of a Private road,** which leads to the aforesaid [County] road [Millers Sawmill Road]." (Emphasis added). Frederick believed that the reference to the "Private road" was intended to refer to the County road. He noted that, if the substitution he suggested was made, the western boundary of Parcel A would align with the Existing Fence line, forming the basis of the Nowaks' claim to the Disputed Land. Stated otherwise, Frederick's thesis was that the Existing Fence line intersects the north boundary at a point 340 feet west of the west side of the

---

**6.** Demonstrative supporting evidence was admitted at trial in the form of photographs of fence remnants and a boring from a tree which had grown around a fence post.

County road. Thus, according to the Nowaks and their expert, this substitution would reconcile the boundary discrepancy by assigning resolution of the dispute to sloppy deed-drafting or a scrivener's error in the Wolf deed. Finally, Frederick noted that "the Wolf deed was not prepared by a professional surveyor because it did not contain compass bearings even though professional surveyors in the 1920's [sic] customarily used compass bearings in property-line descriptions."

Judge Dwyer found the Nowaks' evidence persuasive. He concluded that the Disputed Land belongs to the Respondents and dismissed the Petitioners' trespass claim as a consequence. Judge Dwyer determined, by clear and convincing evidence, that "the fence line that exists now is the monument that was referred to in the deed to Alice Wolfe [sic]." The trial judge concluded further that there was no other fence visible, other than the fence referred to in the Frederick survey. He was not persuaded that there ever was a different, previously existing fence as maintained by the Zenith Survey. Judge Dwyer noted that there is a depression along the existing fence line, but no such depression farther to the west where the Zenith Survey suggested a fence had existed. Finally, Judge Dwyer did not find it reasonable for the Disputed Land to jut out from the Webbs' Parcel B and C property lines, where no comparable extension existed for the properties sharing a similar western border.

The Webbs appealed. Finding that the decision of the trial court was not "clearly erroneous," a panel of the Court of Special Appeals affirmed in an unreported opinion. The intermediate appellate court noted the importance of "giving due regard to the opportunity of the trial court to judge the credibility of the witnesses." We granted the Webbs' petition for writ of *certiorari* on 21 December 2012.

## ANALYSIS

### I. The appropriate standard of appellate review.

The Court of Special Appeals applied the "clearly erroneous" standard in its review of the judgment of the trial

court. Md. Rule 8–131(c) informs the application of this standard as follows:

> When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial judge to judge the credibility of the witnesses.

"The clearly erroneous standard for appellate review in [Maryland Rule 8–131] section (c) ... [, however,] does not apply to a trial court's determinations of legal questions or conclusions of law based on findings of fact." *Heat & Power Corp. v. Air Prods. & Chems., Inc.*, 320 Md. 584, 591, 578 A.2d 1202, 1205 (1990). The Webbs' position rests on their theory that the legal question here does not concern ultimately a boundary line dispute, but rather a legal dispute regarding deed construction (specifically, an interpretation of the Wolf deed). Thus, Petitioners assert that the intermediate appellate court should have reviewed the case without according any deference to the trial court because it has been held consistently in Maryland that construction of deeds is a question of law for the reviewing court, to be considered anew on appellate review. *See, e.g., Olde Severna Park Improvement Ass'n, Inc. v. Barry*, 188 Md.App. 582, 593–94, 982 A.2d 905, 911 (2009). Respondents argue, by contrast, that this case is legitimately a boundary dispute, the resolution of which is fact-dependent. Respondents therefore assert that the "clearly erroneous" standard of appellate review applies.

We agree with Respondents' contention that the "clearly erroneous" standard is the correct standard of appellate review for this case. In *Union United Methodist Church, Inc. v. Burton*, 404 Md. 542, 556, 948 A.2d 1, 9 (2008), we held that "the ultimate determination by the circuit court of the proper location of [a] disputed boundary is a question of fact, which we shall review for clear error." Further, according to *Millar v. Bowie*, "[i]t is clear that a decision of a trial judge, sitting without a jury, that resolves a boundary line dispute, is not to be disturbed unless clearly erroneous." 115 Md.App. 682, 688,

694 A.2d 509, 512 (1997) (quoting *Barchowsky v. Silver Farms, Inc.,* 105 Md.App. 228, 239, 659 A.2d 347, 352 (1995)). Thus, when confronting such a dispute, the trial judge is afforded wide latitude in determining boundary lines. *See* Md.Code (1974, 2003 Repl. Vol.), § 14–111 of the Real Property Article.[7]

In *Ski Roundtop, Inc. v. Wagerman,* 79 Md.App. 357, 366, 556 A.2d 1144, 1148 (1989), the Court of Special Appeals held that a determination of which of two surveys reflected the true boundaries of disputed land as intended by the original surveyor is a question of fact. The trial court is "bound by its factfinding to apply general rules of boundary law to effectuate the original intent as found by the court." *Id.* at 367, 556 A.2d at 1148.

The question before Judge Dwyer, therefore, was one of fact in resolving a boundary dispute. Indeed, the determination of the boundary line in this case (whether along the Existing Fence line as asserted by the Nowaks or some distance west of the Existing Fence as asserted by the Webbs) is a fact-intensive query based on testimonial and/or demonstrative evidence. Even counsel for the Webbs stated at trial that he "recogniz[ed] that there are issues of fact here...." As the Nowaks pointed out, "[the] inquiry, by its very nature, must involve comparing the Wolf deed to conditions in the field—e.g., the location and condition of the [Existing Fence], the location of the Private road and County road, the location of other monuments ... [the] topography of the land ... and even the location of surveyors' pins...." Accordingly, we would consider without deference to the lower court's decision regarding the legal interpretation of a deed only after the proper location of the disputed boundary line has been established by an adequate factual record. *See, e.g., White v. Pines*

---

**7.** Section 14–111, in relevant part, provides as follows: "(c) Boundary lines.—If there is a dispute over any boundary line or if the bounds mentioned in a document are lost, on petition of any party in interest, the circuit court of the county where the property lies may establish the boundary lines or the location of the missing bounds. The court may appoint engineers, surveyors, or other experts to assist the court in its determination...."

*Community Improvement Ass'n, Inc.,* 403 Md. 13, 31, 939 A.2d 165, 175 (2008); *YIVO Inst. for Jewish Research v. Zaleski,* 386 Md. 654, 662–63, 874 A.2d 411, 415 (2005) (quoting *Nesbit v. Gov't Employees Ins. Co.,* 382 Md. 65, 72, 854 A.2d 879, 883 (2004)).

### II. Was the trial court's judgment that the Disputed Land belongs to the Nowaks clearly erroneous?

"If any competent material evidence exists in support of the trial court's factual findings, those findings cannot be held to be clearly erroneous." *Figgins v. Cochrane,* 403 Md. 392, 409, 942 A.2d 736, 746 (2008) (quoting *Schade v. Maryland State Bd. of Elections,* 401 Md. 1, 33, 930 A.2d 304, 323 (2007)); *YIVO Inst.,* 386 Md. at 663, 874 A.2d at 416; *Solomon v. Solomon,* 383 Md. 176, 202, 857 A.2d 1109, 1123 (2004). Our initial task, therefore, is to determine whether the Circuit Court's factual findings are supported by substantial and credible evidence in the record. We believe that is the case here.

At trial, Frederick offered expert testimony in support of his opinion that the correct western boundary line of the Webbs' property, as described in the Wolf deed, runs along the Existing Fence line that he identified in the field. Stotler, Frederick's associate, testified consistently with Frederick's view. Judge Dwyer believed that this testimony "was very compelling on the issue that is the crux of this." In his opinion, Judge Dwyer held that, based on their testimony, he was "reasonably certain . . . that the fence line that exists now is a monument that was referred to in the deed to Alice Wolfe [sic]. There's no other . . . fence visible or evidence of a fence having been visible further back where the Zenith [S]urvey would have put it." Judge Dwyer noted also that there is a depression along the Existing Fence line, but no evidence of any such depression further back at the location where the Webbs contended the fence line was according to the Zenith Survey. Finally, he did not believe that it was reasonable for the Disputed Land to jut out from the other lots comprising the Webbs' property, where there was no companionable

shape for the properties sharing a similar western border. Generally, an interpretation of a deed that would lead to an absurd result is disfavored. *See generally Calomiris v. Woods,* 353 Md. 425, 446, 727 A.2d 358, 368 (1999) (noting that, where language of a contract is open to multiple interpretations, "the reasonableness of [the] result" is a proper consideration); *Olde Severna Park Improvement Ass'n,* 188 Md.App. at 611, 982 A.2d at 922 ("In construing the language of a deed, the basic principles of contract interpretation apply." (citations omitted)). Here, the Webbs offered no evidence to reconcile why the Zenith Survey is the only document of record to establish a western boundary line that does not run along the Existing Fence line.

Although Miller's heirs cannot be considered rightly the original "surveyors" of the Disputed Land, they were in the best position unquestionably to ensure that the deed by which they conveyed to Alice Wolf was incontrovertible. In pursuit of that goal, they left much to the imagination. Compounding the problem, there is in the record no known survey or deed senior to the Wolf deed to illuminate the intent of Miller's heirs regarding the western boundary line of the Disputed Land. The dearth of any hard evidence of a fence monument farther west impairs Petitioners' contentions. The Existing Fence, plowing troughs near this fence, and inferential evidence of a boundary line in common with Parcels B and C, on the other hand, were found compelling by the Court of Special Appeals in reaching its decision that the trial court's judgment was not "clearly erroneous."

Frederick testified that there is evidence of old fence posts along the Existing Fence line, indicating that the fixture was both well-established and repaired extensively over time. Stotler, Frederick's associate, testified that he identified a tree that had grown through and around a portion of the Existing Fence. He took a core sample of the tree and counted a range of 68 to 72 rings at different cross-sections. According to Stotler, this would date effectively the tree, and the fence within it, back to at least 1940—just 12 years after the Wolf deed was recorded. Furthermore, Stotler concluded that,

because the tree "captured" the fence, the fence would have to have been there first. Countering this, counsel for the Webbs postulates that, at best, the Existing Fence was erected in 1938, and that it would not be possible for a tree that germinated in 1938 to "capture" a fence that predated it theoretically by 10 or more years. According to this argument, the Existing Fence could not have been the fence referred to in the Wolf deed.

Moreover, the Existing Fence that the Nowaks identified as the fence they believe is the same fence described in the Wolf deed matches three descriptions found in either the Wolf deed or a subsequent survey: 1) there is a boundary line of 100 feet in length that begins along a fence; 2) a fence that begins at a point exactly 105 feet from the northwest corner of the property of Elliot C. Long; 3) a survey completed in 1970 uses the Existing Fence as the border; and 4) all of the other properties to the north of the Disputed Land use the Existing Fence line as a western boundary line. "[U]nder the clearly erroneous standard, this Court does not sit as a second trial court, reviewing all the facts to determine whether an appellant has proven his case." *L.W. Wolfe Enterprises, Inc. v. Maryland Nat'l Golf, L.P.,* 165 Md.App. 339, 343, 885 A.2d 826, 828 (2005) (quoting *Lemley v. Lemley,* 109 Md.App. 620, 628, 675 A.2d 596, 599 (1996)). Finally, "[t]he appellate court must consider evidence produced at trial in a light most favorable to the prevailing party and if substantial evidence was presented to support the trial court's determination, it is not clearly erroneous and cannot be disturbed." *General Motors Corp. v. Schmitz,* 362 Md. 229, 233–34, 764 A.2d 838, 840 (2001) (quoting *Ryan v. Thurston,* 276 Md. 390, 392, 347 A.2d 834, 835–36 (1975)).

### III. Do the canons of deed interpretation compel a different result?

■ We must determine now whether the canons of deed construction compel us to reverse the decision of the Circuit Court and Court of Special Appeals—that is to say, whether Judge Dwyer erred in interpreting the Wolf deed, based on

the evidence, after locating the western boundary line of the Webbs' property. The canons of deed interpretation are well-settled in Maryland. The interpretation of mortgages, plats, deeds, easements and covenants has been held to be a question of law. "That, as a general rule, the construction or interpretation of all written instruments is a question of law for the court is a principle of law that does not admit of doubt." *Gordy v. Ocean Park, Inc.*, 218 Md. 52, 60, 145 A.2d 273, 277 (1958) (citing *Sperling v. Terry*, 214 Md. 367, 370, 135 A.2d 309, 311 (1957); *Strickler Eng'g Corp. v. Seminar*, 210 Md. 93, 100, 122 A.2d 563, 568 (1956), *Roberts v. Bonaparte*, 73 Md. 191, 199, 20 A. 918, 919 (1890); *Hartsock v. Mort*, 76 Md. 281, 291, 25 A. 303, 305 (1892)).

In *Franklin Coal Co. v. McMillan*, 49 Md. 549, 566 (1878), we held that a call to a monument must be recognized unless the object to which the call refers has been lost. "If the call cannot be found, then the course and distance must prevail." *Wood v. Ramsey*, 71 Md. 9, 19, 17 A. 563 (1889) (a lost stake was no longer deemed controlling). Thus, monuments control over courses and distances where they continue to exist, or their locations can be determined with reasonable certainty. *See also Dundalk Holding Co. v. Easter*, 195 Md. 488, 495, 73 A.2d 877, 879 (1950); *Parran v. Wilson*, 160 Md. 604, 608, 154 A. 449, 451 (1931); *Budd v. Brooke*, 3 Gill 198, 224 (1845); *Hammond v. Ridgely*, 5 H. & J. 245, 255 (1821). The Court of Special Appeals in *Barchowsky v. Silver Farms* points out that "[it is a] general canon of boundary law ... that calls to monuments control if they can be established and that, where a monument called for in a deed is missing, the second priority is the course and distance." 105 Md.App. at 240, 659 A.2d at 353. In *Parran*, 160 Md. 604, 154 A. 449, this Court found a course and distance to be controlling where the original location of the lost monument could not be determined. The Court in that case held, in relevant part:

> The call for a bounded tree, standing on a point at the mouth of a creek, where the tree, and spot where it stood, are lost, and are both incapable of ascertainment with a reasonable degree of certainty, ascertains with less certain-

ty than the course and distance, the termination of the line, and therefore, cannot control them; certainty being the controlling object in all locations.

*Id.* at 608–09, 154 A. at 451 (quoting *Budd,* 3 Gill at 223).

Petitioners argue here that, because the 1928 or earlier fence as located in the description in the Wolf deed is a "lost monument," its status as a monument is terminated, and another object of a similar nature in a dissimilar location (the Existing Fence) may not be substituted in its place. They contend further that there exists today no indicia of a fence matching the description of the one described in the Wolf deed. Consequently, the original monument in the Wolf deed is lost and should be considered no longer a monument. The import of this is that the remaining associated course and distance prevail.

■ The location of a monument called for in a deed must be proven, however, with reasonable certainty. *See Budd,* 3 Gill at 223. At trial, Respondents established beyond a reasonable certainty that the Existing Fence identified by Frederick was the fence referred to in the Wolf deed. Therefore, the trial court found there to be no lost monument. Consequently, the Existing Fence was not a substitution for a monument lost to antiquity. There is nothing in the record to indicate that another relevant fence existed before, at the time of, or after the 1928 Wolf deed.

■ "Where the assumption of mistake in a single description harmonizes all the rest of the grant the court will make that assumption." *Kelso v. Steiger,* 75 Md. 376, 393, 24 A. 18, 21 (1892) (citing *Wilson v. Inloes,* 6 Gill 121, 124 (1847)); *see also White v. Luning,* 93 U.S. 514, 526–27, 23 L.Ed. 938 (1876). This rule is applicable to the instant case. The Nowaks note that the third line of the Wolf deed is described as running 340 feet from the fence to the private lane. Respondents assert that the private road, however, is closer than 340 feet. If, however, the third line of the Wolf deed was extended instead to the County road (the road from which the first line of the deed begins), the distance would be exactly 340

feet.  Interpreting the deed in this manner allowed for the Wolf deed to be reconciled and closure of the deed description completed.

Given the choice between a leap of faith that an asserted lost monument once existed, in the absence of any additional supporting evidence or testimony, and affirming the lower courts which posited their decisions on firmer factual grounds, we choose the latter.  To argue that a lost monument should be considered no monument at all, for the purposes of turning to default principles of deed interpretation, assumes too much on this record.  Judge Dwyer was not clearly erroneous in his factual determination as to the correct boundary line, and no principle of deed interpretation requires otherwise.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED.  PETITIONER TO PAY COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS.**

**684**

Appendix A

A = Parcel A
B = Parcel B
C = Parcel C

*John L Webb, Sr., et ux. v. G. Philip Nowak, et ux.*, No. 83, September Term, 2012